Ronald P. REED, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–86–00647–CR.

Court of Appeals of Texas, Dallas.

May 10, 1988.

E. Brice Cunningham, Dallas, for appellant.

Michael A. Klein, Dallas, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

THOMAS, Justice.

Ronald P. Reed was convicted of aggravated sexual assault and sentenced to life imprisonment and payment of a $10,000 fine. He raises seventeen points of error, contending that: 1) the prosecutor excluded black veniremembers from the petit jury; 2) evidence of extraneous offenses was improperly admitted; 3) the trial court erred in refusing to excuse a veniremember challenged for cause; 4) testimony that complainant previously identified appellant at live and photographic lineups, and introduction of photographs into evidence, constituted improper bolstering of in-court identification; 5) testimony of a probation officer concerning appellant's out-of-state conviction was improperly admitted; and 6) the prosecutor's improper jury argument deprived appellant of a fair trial. Finding no merit in these contentions, we affirm the judgment of the trial court.

## The Facts

On a Sunday afternoon in November, C.H. parked her car near the back door of her condominium in northeast Dallas. She was returning from the grocery store. She left her car, carrying her purse and the Sunday newspaper, and opened the back door of her condo. C.H. set down those items and turned to retrieve the groceries from the car. When she turned, she saw appellant before her, holding a gun. The gun was blue or black, and appellant held it waist high with his arm bent and his elbow close to his side. Appellant was neatly dressed, wearing a brown tweed jacket, white shirt and dark brown pants.

C.H. begged appellant not to hurt her. Nevertheless, he forced her into the condo and closed the door behind him. Appellant demanded money and jewelry, but refused the money C.H. gave him. Appellant asked if anyone were upstairs. C.H. told him her

sister was upstairs. Appellant gestured with the gun for C.H. to go upstairs and said, "Let's go." C.H.'s sister was not home, and when they reached the upstairs bedroom, appellant again demanded C.H.'s jewelry. She started pulling out jewelry from her dresser and offered it to appellant. Appellant appeared uninterested, however, taking C.H.'s watch and placing it on the dresser.

Appellant told C.H. to remove her clothes and sit down on the bed. After she did so, he unfastened his belt and unzipped his pants. He pulled down his pants to reveal his penis, but did not remove his clothes. He put his hand behind the woman's head and forced her to perform oral sex. He threatened her, saying, "Don't bite it or I will make you—eat this gun." Appellant did not ejaculate in the complainant's mouth. He told C.H. to lie back on the bed and spread her legs. He removed his jacket and lowered his trousers. Appellant then vaginally raped C.H. She could feel the gun at her head during the rape.

After raping C.H., appellant searched C.H.'s dresser and took the rings he found. Appellant forced C.H. downstairs without allowing her to dress. Appellant asked for cash, but C.H. had only two dollars. She offered him her credit cards but he did not want them. He walked to the refrigerator and took a bottle of wine from it. Appellant took her to a half-bath and told her to sit down. He shut the door, and C.H. could hear him rummaging through things in the apartment. After a while, appellant opened the door and told her not to tell anyone about the incident, "or the next time I will come in shooting." He shut the bathroom door and C.H. stayed in the bathroom until she heard the back door close and she was convinced appellant had left. C.H.'s jewelry was found in appellant's apartment.

## Peremptory Challenges

In his first point of error, appellant contends that the State, through its peremptory challenges, systematically excluded black veniremembers from the petit jury.

The fourteenth amendment to the constitution forbids the prosecutor to challenge potential jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). Upon reviewing the record, we note that the entire voir dire proceedings were not recorded. The following colloquy occurred at trial:

The Court: Do you want the court reporter to take everything, [defense counsel]?

[Defense Counsel]: No, sir.

The Court: No?

[Defense Counsel]: I'm talking about the voir dire.

The Court: You don't want her to take the voir dire?

[Defense Counsel]: No.

The Court: Are you sure?

[Defense Counsel]: I'm positive, Judge, unless a question arises, we would ask that she be on hand so she could come out and take it down.

The Court: Okay.

As defense counsel requested, the general voir dire was not recorded. Individual questioning of some panel members was recorded.

After the *Batson* hearing, the trial court concluded that appellant had presented a prima facie case of discriminatory use of peremptory challenges, but that the State had rebutted the prima facie case by presenting racially neutral reasons for its strikes. Thus, the court found that appellant had failed to establish purposeful discrimination. In reviewing these findings, we must consider the voir dire proceedings as well as the transcription of the *Batson* hearing. *See Keeton v. State*, 749 S.W.2d 861 at 863 n. 1 (Tex.Crim.App.1988) (opinion following abatement). This Court must affirm the trial court's findings "whenever the record discloses sufficient evidence in their support." *Tompkins v. State*, —— S.W.2d ——, No. 68, 870, slip op. at 8 (Tex.Crim.App. Oct. 7, 1987).

■ We cannot follow the mandate of *Keeton* and *Tompkins* to review the entire voir dire proceedings when the record before us is a partial transcription of the proceedings. It is well settled that complaints as to voir dire error cannot be reviewed in the absence of a transcription of the complete voir dire examination. *See Burkett v. State*, 516 S.W.2d 147, 150 (Tex. Crim.App.1974) (restriction of voir dire questioning unreviewable absent entire record of voir dire); *Graves v. State*, 513 S.W.2d 57, 62 (Tex.Crim.App.1974) (prosecutor's improper remarks unreviewable absent entire record of voir dire); *Magee v. State*, 504 S.W.2d 849, 852 (Tex.Crim.App. 1974) (cannot determine whether juror improperly concealed bias in absence of entire record of voir dire); *Guerrero v. State*, 487 S.W.2d 729, 731 (Tex.Crim.App.1972) (whether court erred in refusing to excuse five veniremen who allegedly showed bias cannot be determined in absence of transcription of voir dire). Consequently, we overrule point of error one.

### Extraneous Offenses

■ In eight points of error, appellant contends that the trial court erred in admitting evidence of extraneous offenses. After appellant offered four alibi witnesses, the State offered as rebuttal the testimony of two women who identified appellant as the man who sexually assaulted them. Appellant contends that such evidence was inadmissible. We disagree. The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W. 2d 344, 346 (Tex.Crim.App.1983). To this end, an extraneous offense is usually not admissible. Extraneous offense testimony is not, however, always inadmissible. The test for determining the admissibility of any evidence, including evidence of extraneous offenses, involves a two-step inquiry: 1) whether the evidence is relevant to a material contested issue in the case other than the defendant's character; and (2) whether the probative value of the evidence outweighs its inflammatory aspects. *Robinson v. State*, 701 S.W.2d 895, 895 (Tex.Crim.App.1985); *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983).

We will first examine the question of relevancy of the extraneous offenses to a material contested issue in this case. The identity of the accused as the wrong-doer is one of the material issues which is raised by the State's pleading an offense in any charging instrument. *Moore v. State,* 700 S.W.2d 193, 199 (Tex.Crim.App.1985). Thus, we must determine whether identity was a *contested* issue in this case. In other words, the inquiry is whether appellant during the trial raised the issue of his identification. The State argues that appellant placed his identity in issue by raising the defense of alibi.

An alibi defense does not invariably create a material issue as to the accused's identity so as to justify the admission of extraneous offense testimony. *Boutwell v. State,* 719 S.W.2d 164, 172 (Tex.Crim.App. 1985); *Moore v. State,* 700 S.W.2d 193, 199 (Tex.Crim.App.1985). In *Boutwell,* identity was not placed in issue by the defendant's alibi because "each of the State's witnesses not only knew appellant, but knew him quite well." *Boutwell,* 719 S.W.2d at 171. The alibi evidence merely raised an issue as to the credibility of the State's witnesses. *Id.* The *Boutwell* court recognized that the rule is very different when the complainant does not know the accused: "It is true that in cases where the accused is a stranger to the State's witnesses, his evidence that he was elsewhere at the time of the offense will *generally* raise a material issue as to his identity as the perpetrator." *Boutwell,* 719 S.W.2d at 172 (emphasis original); *see also Mizell v. State,* 732 S.W. 2d 384, 385 (Tex.App.—Houston [14th Dist.] 1987, pet. granted).

In the case at bar, C.H. testified that she had never seen her assailant before the day of the assault. Appellant's alibi defense put into issue whether C.H. had misidentified appellant as her attacker. The alibi defense raised the issue of identity in this case. Having determined that identity was a material contested issue, we turn now to whether the extraneous offenses were relevant to the issue of identity.

Extraneous offenses are relevant to the issue of identity if there are distinguishing characteristics common to both the extraneous offense and the offense for which the defendant is on trial or if there is a high degree of similarity so as to earmark them as the handiwork of the accused. *Castillo v. State,* 739 S.W.2d 280, 289 (Tex.Crim.App.1987); *Moore,* 700 S.W. 2d at 201; *Collazo v. State,* 623 S.W.2d 647, 648 (Tex.Crim.App.1981).

It is unnecessary to detail the testimony of the other two assault victims. Suffice it to say that having described the sexual assault upon C.H., we have also described the other two. We note the following common characteristics of the three assaults: 1) all three women lived in apartment/condominium complexes in northeast Dallas; 2) appellant approached the woman after she unlocked the door while carrying something from the car; 3) appellant pushed the women into the apartment and closed the door behind them; 4) appellant wielded a gun, holding it waist high and close to his body; 5) appellant was nicely dressed, wearing slacks, shirt and jacket; 6) appellant demanded money or jewelry upon initial entry; 7) in each case appellant asked if anyone else was in the home; 8) all three women were told to remove their clothes and sit on the bed; 9) appellant remained clothed, only dropping his trousers, in each case; 10) in each case appellant compelled the victim to engage in oral intercourse and then raped them vaginally; 11) in each case, appellant stole money and jewelry, refusing the opportunity to take credit cards; 12) the jewelry from all three women was found in appellant's apartment; 13) appellant warned all three not to tell the police; 14) in the charged offense and in one of the extraneous offenses, appellant told the victim to wait in the bathroom; and 15) in the charged offense and in one of the extraneous offenses, appellant looked through the refrigerator. We hold that these similarities make the extraneous offenses relevant to the contested identity issue.

Our second inquiry is whether the probative value of the extraneous offenses outweighs the prejudicial effect. *Robinson,* 701 S.W.2d at 895; *Williams,* 662 S.W.2d

at 346. The Court of Criminal Appeals has used several factors to measure the probative value of an extraneous offense: 1) presence of similarity between the prior acts and the offense charged; 2) closeness in time of the extraneous transactions to the charged offense; and 3) availability of alternative sources of proof. *Robinson,* 701 S.W.2d at 898.

We have already noted the similarities between the charged offense and the extraneous offenses. Such close factual similarity lends substantial probative value to the extraneous transactions. *See Robinson,* 701 S.W.2d 898. In addition, the three offenses occurred within a ten-day period. Thus, the three offenses were sufficiently close in time to have provided additional probative value. *Id.*

Perhaps the most troublesome ingredient of probative value is the availability of alternative sources of proof. *See Robinson,* 701 S.W.2d at 898; *Morgan v. State,* 692 S.W.2d 877, 880 n. 4 (Tex.Crim.App. 1985). Where there is little or no controverting evidence offered by a defendant, it is clear that the use of an extraneous offense is unnecessary and offers virtually no probative value. *Prior v. State,* 647 S.W.2d 956, 959 (Tex.Crim.App.1983). The presence of some controverting evidence, particularly when presented in the form of the defensive theory, will enhance the probative value. *Robinson,* 701 S.W.2d at 895; *Albrecht v. State,* 486 S.W.2d 97, 101 (Tex.Crim.App.1972). The Court of Criminal Appeals considers whether the State's evidence is circumstantial or direct when examining this factor. *See Moore,* 700 S.W.2d at 198. In essence, the touchstone for probative value appears to be whether the State *needs* the evidence to prove its case. The greater the need for the evidence, the more likely it will be admissible. *Wells v. State,* 730 S.W.2d 782, 785 (Tex. App.—Dallas 1987, no pet.).

In this case, there was direct testimony from the complainant that appellant sexually assaulted her. However, this evidence was rebutted by appellant's alibi testimony. The four alibi witnesses presented strong testimony and were not impeached by prior convictions or otherwise. The only factor affecting their credibility was their relationship with the accused. Appellant's brother and three friends offered the alibi testimony. Further strengthening appellant's claim that C.H. had mistakenly identified him was testimony that the fingerprints found in C.H.'s apartment were not appellant's. Although the jewelry found in appellant's apartment lessens the impact of appellant's alibi defense, there was testimony that two other men lived in the apartment and had access to the bathroom drawer where the jewelry was found. Given the strength of appellant's controverting evidence, we conclude that the State had no alternative sources of proof and needed recourse to the extraneous offense evidence.

Taking into account the various factors of strong similarity, proximity in time, and presence of strong controverting evidence in the form of a defensive theory of alibi, we hold that the extraneous offenses had probative value as to appellant's identity. We turn now to examine the prejudicial effect.

Courts have often noted the inherent prejudicial effect of using extraneous offenses. Prejudice arises "since the accused has no notice he will be called to defend against it, and his 'propensity to commit crimes' is not material to whether he is guilty of the specified conduct which is charged by the State." *Robinson,* 701 S.W.2d at 899 (quoting *Williams,* 662 S.W. 2d at 346). In *Robinson,* the court noted two ways in which the inherent prejudice may be lessened: 1) introduction of the evidence as a transaction rather than as a criminal offense; and 2) a proper instruction on the limited use of an extraneous offense.

In *Robinson,* a theft case involving an attorney keeping client property, the extraneous offense also involved the retention of client funds. Such action could be presented to the jury as a transaction rather than as a criminal offense. Further, appellant, through cross-examination, made it clear that no civil or criminal action had resulted from the transaction. In *Plante v. State,*

692 S.W.2d 487 (Tex.Crim.App.1985), the charged offense was theft by deception and the extraneous transactions involved similar credit transactions where payment was never received.

Clearly, the extraneous offenses in *Robinson* and *Plante* could be presented in a non-criminal context. Obviously, the same cannot be said for the two sexual assaults involving deadly weapons presented in this case. The court noted in *Plante* and *Robinson,* however, that the State's jury argument was noninflammatory and that the State did not attempt to brand the accused as a criminal in general. *Robinson,* 701 S.W.2d at 899; *Plante,* 692 S.W.2d at 494. In the case at bar, the State limited its discussion of the extraneous assaults to their tendency to prove identity. We conclude that the State's noninflammatory jury argument lessened the prejudicial impact of the extraneous transactions.

The court's charge to the jury contained a proper instruction limiting the jury's consideration of the extraneous offenses to the issue of identity. This instruction lessened the prejudicial effect of the extraneous offenses. *Robinson,* 701 S.W.2d at 899.

Taking into account the noninflammatory jury argument and the proper limiting instruction, we conclude that the prejudicial effect of the extraneous offenses in this case was relatively low. Given the high probative value of the evidence and its lower prejudicial effect, we hold that the extraneous offense evidence was properly admitted in this case. Points of error two through nine are overruled.

### Challenge for Cause

■ In his tenth point of error, appellant contends that the trial court erred in refusing to excuse a veniremember upon appellant's challenge for cause. In order to obtain a reversal of a conviction on appeal with respect to a challenge for cause, the complaining party must show: 1) an erroneous ruling by the trial court on a challenge for cause, 2) an exhaustion of his peremptory challenges, and 3) evidence that an objectionable juror actually sat on the case. *Powers v. State,* 497 S.W.2d 594,

595 (Tex.Crim.App.1973); *Johnson v. State,* 713 S.W.2d 741, 744 (Tex.App.—Dallas 1986, pet. ref'd).

■ In this case, the jury strike list shows that appellant utilized only nine of his ten allowed peremptory challenges. Thus, appellant has failed to carry his burden of establishing prejudice from the alleged error of refusing his challenge for cause. *Sharp v. State,* 707 S.W.2d 611, 622 (Tex.Crim.App.1986); *East v. State,* 702 S.W.2d 606, 611 (Tex.Crim.App.1985). Consequently, we overrule appellant's tenth point of error.

### Bolstering Identification Testimony

In points of error eleven, twelve and thirteen, appellant complains of improper bolstering of the complainant's in-court identification. C.H. identified appellant in the courtroom as the man who raped her. She also testified concerning two photographic lineups conducted by the police. Appellant's photograph was not included in the first lineup and C.H. told the police that her attacker was not pictured. She further testified that she identified appellant in a second photographic lineup. The police officer who conducted the lineups testified only that he showed the photographs to C.H. He did not testify that C.H. identified appellant's photograph.

■ It is well settled that the State cannot call other witnesses to bolster the testimony of an unimpeached witness. *Lyons v. State,* 388 S.W.2d 950, 951 (Tex.Crim. App.1965). However, no bolstering occurs when a witness who identifies a defendant at trial also testifies that he identified the defendant in a pretrial lineup. *Wyatt v. State,* 566 S.W.2d 597, 601 (Tex.Crim.App. 1978); *Sanders v. State,* 688 S.W.2d 676, 679 (Tex.App.—Dallas 1985, pet. ref'd); *Lewis v. State,* 631 S.W.2d 813, 815 (Tex. App.—Fort Worth 1982, no pet.). Thus, C.H.'s testimony did not constitute improper bolstering.

■ We also conclude that the police officer's testimony did not constitute improper bolstering. Because he did not testify that the complainant had identified ap-

pellant's photograph, his testimony did not bolster C.H.'s testimony that she identified appellant in a pretrial lineup. *Sanders*, 688 S.W.2d at 679; *Hastings v. State*, 641 S.W.2d 332, 334 (Tex.App.—Dallas 1982, pet. ref'd). Accordingly, we overrule points of error eleven, twelve and thirteen.

### *Proof of Prior Conviction*

In points of error fourteen and fifteen, appellant contends that the trial court erred in admitting Shirley Griffin's testimony because: 1) appellant was not allowed to voir dire the witness outside the presence of the jury; and 2) the witness' testimony was based on hearsay.

At the punishment stage, Shirley Griffin, a probation officer, testified concerning appellant's two prior convictions in Indiana. She testified that appellant was convicted of conversion, a misdemeanor, in Monroe County, Indiana on April 5, 1983. Although she was not present in court when he was convicted, she met him that day at LaPorte County, Indiana, when his Monroe County probation was transferred to LaPorte County. Pursuant to the probation, appellant reported to her on a regular basis. On October 7, 1983, appellant was convicted of the felony offense of conspiracy to commit robbery in LaPorte County, Indiana.

Appellant first contends that the trial court erred in refusing him the opportunity to question the witness outside the presence of the jury. The court agreed to a hearing outside the presence of the jury at which the State summarized what it expected Griffin's testimony to be about the conversion conviction. Appellant objected to such testimony because Griffin was not present in court when he was convicted. The court overruled the objection.

■ We reiterate that the court held a hearing to determine the admissibility of Griffin's testimony. Appellant's complaint is that he was not allowed to call Griffin to testify during the hearing. We note, however, that the State and appellant both summarized for the court what Griffin's

testimony would be. In fact, her trial testimony was exactly as described at the hearing. The trial court enjoys broad discretion in the conduct of the trial and the questioning of witnesses. *Suiter v. State*, 165 Tex. Cr.R. 578, 310 S.W.2d 81, 82 (1958) (trial court did not abuse discretion in refusing request to voir dire witness outside jury's presence). We hold that the trial court did not abuse its discretion in choosing to determine the admissibility of Griffin's testimony based upon offers of proof rather than upon live testimony of the witness.

Appellant next argues that Griffin's testimony as to the conversion conviction was inadmissible because it was based on hearsay. At trial, appellant objected based upon the best evidence rule. Appellant's trial objection does not comport with his point of error on appeal; consequently, nothing is preserved for review. *Euziere v. State*, 648 S.W.2d 700, 703 (Tex.Crim. App.1983). We overrule points of error fourteen and fifteen.

### *Reputation Evidence*

In his sixteenth point of error, appellant contends that Griffin's testimony as to his reputation was improper because she was not familiar with appellant's reputation at a time close to trial.[1] Griffin testified that she had known appellant since April 5, 1983. She saw him last on March 29, 1985, when his probation was discharged. She last discussed his reputation on that day, having talked to six people who knew appellant through his employment, his school, and through local law enforcement agencies. His reputation for being peaceful and law abiding was bad.

■ The prior character of a defendant for being peaceful and law abiding is some evidence of what his present character is. Thus, testimony regarding prior character is admissible if it is not so remote as to have no probative value in indicating present character. *Nethery v. State*, 692 S.W.2d 686, 706 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). The question of re-

---

**1.** We note that appellant does not contend that reputation evidence was inadmissible *per se.*

moteness rests in the discretion of the trial court. *Id.* at 706; *Davis v. State,* 545 S.W.2d 147, 150 (Tex.Crim.App.1976). In *Nethery,* the reputation witness testified that the defendant's reputation in his hometown was bad. The defendant had left his hometown two or three years before the trial. The court held that the trial court had not abused its discretion. *Nethery,* 692 S.W.2d at 706.

 In the case at bar, the trial commenced April 7, 1986. Griffin was familiar with appellant's reputation through March 29, 1985, only one year and nine days prior to trial. We hold that the reputation evidence was not so remote as to have no probative value. Appellant has shown no abuse of discretion. Point of error sixteen is overruled.

### *Jury Argument*

In his seventeenth, and final, point of error, appellant complains of improper jury argument. At the punishment stage, the prosecutor argued: "I would like to think that in this day and age when just about every time you pick up a newspaper or you turn the television on, you see some massive, horrendous, bloody offense...." Appellant objected that the argument was outside the record and the trial court sustained the objection. Pursuant to appellant's request, the trial court instructed the jury to disregard the remark. Appellant moved for mistrial and the motion was denied.

When an argument exceeds the scope of proper argument, it will not constitute reversible error unless, in light of the record as a whole, the argument is extremely or manifestly improper, violative of a mandatory statute, or injects into the trial new facts harmful to the accused. *Dickinson v. State,* 685 S.W.2d 320, 322 (Tex.Crim.App.1984). Ordinarily, any injury from improper jury argument is obviated when the court instructs the jury to disregard, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *McKay v. State,* 707 S.W.2d 23,

37 (Tex.Crim.App.1985); *Brown v. State,* 692 S.W.2d 497, 502 (Tex.Crim.App.1985).

In light of the trial court's prompt instruction to disregard, we conclude that error, if any, was rendered harmless. Viewing the record as a whole, we hold that the statement was not so inflammatory that the jury was unable to disregard it when instructed to do so by the court. Point of error seventeen is overruled.

Having considered and overruled appellant's seventeen points of error, we affirm the judgment of the trial court.