Jeffery Arnold THRIFT, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–02–00201–CR.

Court of Appeals of Texas,
Waco.

March 17, 2004.

Rehearing Overruled May 12, 2004.

Walter M. Reaves Jr., West, for appellant.

John W. Segrest, Dist. Atty., Christy Barber, Asst. Dist. Atty., McLennan County, for appellee.

Before Chief Justice TOM GRAY, Justice BILL VANCE, and Justice REYNA.[1]

## MEMORANDUM OPINION

BILL VANCE, Justice.

A jury convicted Jeffery Arnold Thrift on two counts: sexual assault of a child and indecency with a child. The jury assessed punishment at fifteen years in prison on each count which the trial court ordered to run concurrently. On appeal,

---

1. This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took office on January 5, 2004, participated in the decision.

Thrift complains that (1) the State asked improper commitment questions on voir dire about whether jurors could convict based on the testimony of a single witness, and (2) regarding the indecency conviction, sexually-explicit photographs of minors found in his residence should not have been admitted into evidence.

We will affirm the conviction for sexual assault and reverse the conviction for indecency with a child.

### Improper Voir Dire

■ We find that the complaint about the voir dire question was not properly preserved. Tex.R.App. P. 33.1(a). The State asked numerous jury-panel members about whether they could convict based on the testimony of a single witness, and how they "felt" about convicting based on the testimony of a single witness. Most of the questions were not objected to. Eventually, defense counsel did object and obtain a ruling limiting the State's questioning to how panel members "felt." But by then the matter had been explored with the jury panel, without objection. We will not review unpreserved complaints. *Id.* Therefore, we overrule the first issue.

### Photographs

The elements of the offense of indecency with a child are:

(a) A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact;

. . .

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child;

. . .

Tex. Pen.Code Ann. § 21.11 (Vernon 2003).

■ The State offered four photographs of nude teenage males, sexually aroused, which were found in a Dallas Cowboys book at Thrift's residence. Defense counsel objected that the photographs were inadmissible (a) under Rule 404(b) as extraneous bad acts and (b) under Rule 403 because the probative value of the pictures was substantially outweighed by the danger of unfair prejudice that might be caused by them. Tex.R. Evid. 403, 404(b). The trial court admitted the photographs on the ground they were relevant to prove that the act supporting the "indecency with a child" offense, *i.e.*, Thrift touching the minor's genitals, was done with the intent to arouse Thrift, which is also an element of that offense. The trial court gave the following jury-charge instruction:

You are instructed that certain testimony has been admitted before you regarding certain pictures, State's exhibits 15, 16, 17 and 18. You cannot consider said pictures and testimony concerning same unless you believe beyond a reasonable doubt that the defendant possessed said pictures, if he did. And even then you may only consider same, if you consider same at all, in determining the intent of the defendant to arouse or gratify his sexual desire as alleged in Count Two of the indictment, and for no other purpose.

When properly objected to under *both* Rules 404(b) and 403, as here, the trial court's analysis for admissibility requires not only that the extraneous-act evidence relates to one of the matters listed in Rule 404(b), here "intent," but also that the

evidence passes the test of Rule 403, *i.e.*, that the probative value of the evidence not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or its tendency to mislead the jury. TEX.R. EVID 403; *Santellan v. State,* 939 S.W.2d 155, 168–69 (Tex.Crim.App.1997); *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App.1990) (opinion on reh'g); *Graff v. State,* 65 S.W.3d 730, 739 (Tex. App.-Waco 2001, pet. ref'd). The trial court's decisions about the admissibility of evidence under Rules 403 and 404(b) are reviewed for abuse of discretion. *Santellan,* 939 S.W.2d at 168–69.

■ Factors considered by a trial court in a Rule 403 analysis are:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the evidence of the other offense has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.,* does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Id.* at 169 (citing *Montgomery,* 810 S.W.2d at 389–90). Relative to "4," courts have repeatedly held that evidence fails the Rule 403 test if the Rule 404(b) matter is not controverted and can be readily inferred from other evidence, including the offense itself. *Cantrell v. State,* 731 S.W.2d 84, 89 (Tex.Crim.App.1987) (gener-

ally); *Castillo v. State,* 910 S.W.2d 124, 127–28 (Tex.App.-El Paso 1995, pet. ref'd, untimely filed) ("intent to arouse" in a case of indecency with a child; reversed); *Garcia v. State,* 827 S.W.2d 27, 30 (Tex.App.-Corpus Christi 1992, no pet.) ("intent to arouse" in a case of indecency with a child; reversed); *Reed v. State,* 751 S.W.2d 607, 612 (Tex.App.-Dallas 1988, no pet.) ("identity").

Our review measures the trial court's ruling against the "relevant criteria ... (1) that the fact at issue was not seriously contested; (2) that the State had other convincing evidence to establish the issue; (3) that the probative value of the evidence was not particularly compelling; and (4) that the evidence was of such a nature that a limiting instruction would not likely have been effective." *Graff v. State,* 65 S.W.3d 730, 740 (Tex.App.-Waco 2001, pet ref'd) (citing *Reese v. State,* 33 S.W.3d 238, 241 (Tex.Crim.App.2000), and *Montgomery,* 810 S.W.2d at 392–93.). Thrift was eighteen at the time of the alleged offenses. The minor was a male, JB, who was age fourteen at the time. The offenses allegedly occurred one night at Thrift's residence when JB and a number of other minors were present. JB testified that Thrift placed his hand on JB's penis and performed oral sex on JB. Another teenager, BM, testified that he saw Thrift's hand on JB's penis. Thrift's defense was that JB was lying and the incident never occurred.

Under this evidence, Thrift's intent to gratify himself by touching JB was not in controversy—why else would he have touched JB's penis and performed oral sex on him? Instead, the controversy was whether the incident JB and BM described in fact occurred. Therefore, under *Cantrell* and other cases, even if the pictures were relevant to show "intent to arouse," they failed the Rule 403 test. Moreover,

these graphic images were of a nature that a limiting instruction would not likely have been effective. Therefore, we conclude that the trial court abused its discretion. *Id.* ("When the record demonstrates one or more of the relevant criteria reasonably creating a risk that the probative value of the tendered evidence is substantially outweighed by the danger of unfair prejudice, then we should conclude that the trial court abused its discretion.").

■■■ Having found error, we must review for harm. We will disregard any error that does not affect a substantial right of the complaining party. Tex.R.App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). We do not reverse if, "after examining the record as [a] whole, [we have] fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim. App.1998); *see also Schutz v. State,* 63 S.W.3d 442, 444 (Tex.Crim.App.2001). The reviewing court should consider everything in the record, including all the evidence admitted, the closing arguments, and voir dire. *Motilla v. State,* 78 S.W.3d 352, 358 (Tex.Crim.App.2002). The strength of the evidence of guilt, especially if it is overwhelming, is a factor to be considered. *Id.* at 357–58.

The evidence was not overwhelming that Thrift was guilty. JB testified about the allegations against Thrift, but admitted he had a lot of alcohol that night. BM confirmed JB's testimony in part when he testified he saw Thrift with his hand on JB's penis. The defense called Thrift to testify; he denied the charges. The defense also called four minors who were at Thrift's residence that night. They could not say that JB's accusations were untrue or could not have happened, but they did not testify that they had witnessed Thrift touch JB. They also contradicted some of JB's and BM's testimonies about who was where in the residence at various times, doing what. They were, however, testifying about events two years old. Finally, AA, a female who is Thrift's cousin and who was thirteen at the time of the alleged offenses, testified that the photographs were hers, and that she had downloaded them off the internet and placed them in the Dallas Cowboys book.

The jury heard the evidence and impliedly believed JB and BM but not Thrift and his witnesses. As a general rule we defer to the jury's credibility determinations. However, although AA claimed ownership of the photographs, we do not know whether the jury believed her, which would preclude any prejudicial effect of the photographs. And, we do not know that it was the credibility-weighing of the witnesses that led to the verdict, rather than that the photographs "tipped the scales" in a close case. Thus, the strength of the evidence of guilt does not weigh in favor of a finding that the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *King,* 953 S.W.2d at 271.

In a case in which evidence about the offenses comes primarily from two witnesses who directly contradict each other, and there is little circumstantial evidence and no physical evidence, the possibility that photographs like these affected the verdict is high because of their blatant sexual content of the sort alleged against the defendant. In addition, the charge instruction increased the possibility of harm because it instructed the jury that it could consider the photographs to determine "intent." And the possibility of harm

is not significantly reduced by the passing mention by the State in closing argument that AA claimed ownership of the photographs. After examining the record as a whole, we cannot say we have a "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson*, 967 S.W.2d at 417; *Castillo*, 910 S.W.2d at 127–28; *Garcia*, 827 S.W.2d at 30. Therefore, finding harmful error, we sustain the issue.

### Conclusion

We sustain the conviction and judgment for sexual assault of a child, and we reverse the conviction and judgment for indecency with a child and remand for further proceedings on that offense.

Justice GRAY dissenting and concurring.

TOM GRAY, Chief Justice, dissenting and concurring.

This is a simple case. An element of the indecency with a child count that the State must prove is whether by touching the genitals of a minor, Thrift did so ". . . with the intent to arouse or gratify the sexual desire of . . ." Thrift. As an element of the indicted offense, it had to be proven beyond a reasonable doubt by the State. The trial court admitted four photographs of naked boys found in a book in Thrift's room. The trial court gave a limiting instruction about using the photographs only for the purpose of proving this element of the offense and no other.

I take issue with certain aspects of the majority's decision to reverse the trial court's judgment on this count. But I will limit my comments because we have been down this road before, albeit with a different result. *Graff v. State*, 65 S.W.3d 730 (Tex.App.-Waco 2001, pet. ref'd).

While the majority lists the relevant criteria for review of a trial court's ruling on a 403 objection, it only mentions one in the discussion: that a limiting instruction would not have been effective. Because the court gave a limiting instruction, the majority apparently means the limiting instruction given *was* not effective. But that is not my main concern. I am concerned that there is no discussion as to *why* the "graphic images where of a nature" that would make a limiting instruction ineffective. And I wonder why there is no discussion of any of the other criteria. I *understand* that it takes the demonstration of only one criteria to conclude that the trial court abused its discretion. But without an analysis of the effect of the limiting instruction on this criteria, would a discussion of the other criteria lead to a conclusion that a limiting instruction was effective as to all of them? Maybe, maybe not. But without any discussion of the other criteria and no discussion as to why a limiting instruction is not effective, I cannot agree to hold that the trial court abused its discretion; *i.e.*, that the trial court was outside the zone of reasonable disagreement. *Graff*, 65 S.W.3d at 739.

Indirect proof of Thrift's intent in touching the minor is clearly admissible.[1] The element of intent had to be proven to obtain a conviction. Showing to the jury pictures of other naked boys that were found hidden in a book in Thrift's bedroom would tend to show that Thrift was aroused or gratified by young males and

---

1. As an aside, I note that the limiting instruction may have been unduly restrictive in limiting the photographs only to show intent. The photographs may also have been admissible to show motive, preparation, plan, or other 404(b) criteria. But then, I must also note that the majority has trouble following the instruction. The instruction expressly limited use of the testimony to intent to gratify in connection with the touching of J.B.'s genitals, not the oral sexual assault on him.

that was his intent by touching the minor. The relevance of the evidence is not the issue. And the majority does not take issue with the relevance of the evidence. Rather, the majority contends that the probative value of the photographs to establish this element of the State's case was substantially outweighed by the danger of unfair prejudice. Actually, the majority does not tell us if the photographs were inadmissible because of the danger of unfair prejudice, confusion of the issues, or the tendency of the evidence to mislead the jury, though the objection was only that the photographs were unfairly prejudicial.

But again, the majority does not tell us what is *unfairly* prejudicial about the photographs, assuming that this is the reason for the exclusion of the photographs. They rely on what they have decided is the relatively low need for the evidence of intent, to reduce only one side of the equation—the probative value of the photographs. The majority states that the issue of intent was not in controversy because Thrift's defense was that "... the incident never occurred."

The State takes a different view of the balancing test, as do I, because the element of intent was controverted. When a defendant contends an event did not occur, that denial puts every element of the offense in issue, as it is with any not-guilty plea. *See Old Chief v. U.S.,* 519 U.S. 172, 199–200, 117 S.Ct. 644, 659, 136 L.Ed.2d 574 (1997); Tex.Code Crim. Proc. Ann. art. 27.17 (Vernon 1989). Thus, the State certainly was justified in feeling compelled to prove every element of the offense that the legislature requires be proven before Thrift could be convicted.

But the majority has decided the evidence was not needed: unnecessary piling-on. It wants to circumscribe what evidence the State may use, thus limiting its ability to prove its case. They are deciding for the State, after the trial, how much of the relevant evidence is needed to prove an element of the offense. The majority states: "Under this evidence, Thrift's intent to gratify himself by touching JB was not in controversy—why else would he have touched JB's penis and performed oral sex on him?"

Of course the element was in controversy because Thrift pled not-guilty. And if intent to gratify was always to be inferred from the conduct alone, there would be no need for the separate element of intent to arouse or gratify the sexual desires of the defendant. Did Thrift share with the State what his defense would be? Would it really matter? Should a defendant be allowed to take a defensive position and thereby limit what evidence the State could use to obtain a conviction? We were not there. We rely upon the jury. The jury was given a very specific instruction about the use of this evidence. The majority believes they could not follow that instruction.

While the majority seems comfortable with its conclusion of why Thrift was touching JB, I am not. As long as we are going to speculate, maybe Thrift simply wanted to gratify JB, not himself; maybe he was paid to gratify JB; maybe he was going to receive alcohol or drugs in return for gratifying JB. The truth is, we do not know. The photographs were intended to assist the jury in deciding why an 18 year old male would touch the penis of a 14 year old male. The jury was properly instructed about how to use the evidence.

But this rhetorical question asked by the majority—"why else would he have touched JB's penis and performed oral sex on him?"—also shows that their harm analysis is flawed. We have just recently set out the harm analysis to be used for Rule 403 error. *Graff,* 65 S.W.3d at 741–

742. Why the majority completely disregards our precedent, I do not know. The evidence of Thrift's guilt, while controverted, was substantial. The State did not place much emphasis on the photographs. And other extraneous evidence, four prior misdemeanor convictions which reflected poorly on Thrift's character, was admitted without objection. Under the proper analysis, the error, if any, was harmless.

I have no trouble in reviewing this case, especially in view of the limiting instruction, and holding that the trial court did not abuse its discretion—the trial court was not outside the bounds of reasonable disagreement—by admitting the photographs into evidence. I would overrule this issue and affirm the trial court's judgment in its entirety. Because the majority does not, I respectfully dissent from that portion of this Court's judgment which reverses Thrift's conviction for indecency with a child.

I concur in affirming the judgment of conviction on sexual assault of a child.

**OPINION DENYING REHEARING**

We affirmed Jeffery Thrift's conviction for sexual assault and reversed the conviction for indecency with a child due to the admission of improper evidence. Thrift and the State have filed motions for rehearing.

Citing *U.S. v. Pelullo*, 14 F.3d 881, 897–900 (3rd Cir.1994), Thrift says that the "spillover effect" of the improperly admitted evidence tainted both convictions, not just the indecency conviction.

The State says that we erred in holding that the evidence should have been excluded under Rule 403.

In *Pelullo*, the jury had convicted the defendant of forty-nine counts of wire fraud. The Third Circuit reversed all forty-nine counts because the trial court had improperly admitted evidence of a prior conviction on one of them. *Id.* The court noted that generally invalidation of the conviction on one count will not lead to automatic reversal on other counts. *Id.* at 897. It noted, however, the possibility of a "spillover effect" from the tainted count that could be sufficiently prejudicial to call for reversal of all counts. *Id.* at 897–98. The factors it considered are: (1) whether the charges are intertwined with each other; (2) whether the evidence for each count was sufficiently distinct to support the verdict on other separate counts; (3) whether substantially all the evidence introduced to support the invalid conviction would have been admissible to prove other counts, and whether the elimination of the invalid count would have significantly changed the strategy of the trial; and (4) whether the charges, the language used by the prosecution, and the evidence introduced at trial are of the sort that would arouse a jury. *Id.* at 898–99.

We have found but a single Texas case that discussed the "spillover effect." *Ex parte Mills*, 795 S.W.2d 203, 204 (Tex. Crim.App.1990). In *Mills*, a habeas corpus proceeding, the Court of Criminal Appeals asked whether Mills, who had been convicted on two counts of "theft by receiving" and assessed 65 years on each count, was entitled to a new trial on the offense upheld on appeal while the other was reversed and an acquittal ordered for legally insufficient evidence. *Id.* Mills argued, "there is no way of knowing if the finder of fact would have assessed the same punishment had Applicant been found guilty of only one of the counts." *Id.* at 203. The Court asked, "does the spillover effect of the improper conviction require a new punishment hearing on the surviving conviction?" *Id.* at 204. Finding that Mills had not demonstrated that the jury's consideration of the invalid count had contrib-

uted to the sentence on the valid count, the Court denied relief. *Id.* at 205.

 In assessing harm under Rule 44.2(b), we are mindful that "it is the duty of the reviewing court to assess harm from the context of the error," not the duty of the parties to show harm or lack thereof. *Johnson v. State,* 43 S.W.3d 1, 4 (Tex. Crim.App.2001). We accept the proposition that a "spillover effect" could occur and taint another count when evidence was improperly admitted on one count.

 Thrift was charged in two counts with sexual assault of J.B. and indecency with a child, namely J.B. The events occurred in a short time-frame at a single location. The counts were tried together and the main witnesses who testified about the acts were J.B., Thrift, and M.B., who testified about the indecency charge. The potential for harm on both counts flowing from the improperly admitted evidence is sufficient to merit an inquiry under the factors outlined above.

Were the charges intertwined with each other? Yes, the two acts occurred at the same location within a short period of time. Was the evidence for each count sufficiently distinct to support the verdict on the other counts? Yes, although closely related in time, the victim testified about two distinct acts that constituted the separate offenses. Would substantially all the evidence introduced to support the invalid conviction have been admissible to prove other counts, and would the elimination of the invalid count have significantly changed the strategy of the trial? Yes, substantially all the evidence would have been admissible on the sexual assault count; no, the strategy of the trial would not have changed significantly. And finally, were the charges, the language used by the prosecution, and the evidence intro-

duced at trial of the sort that would arouse a jury? Yes, but the nature of the sexual assault itself was sufficient to arouse the jury.

As we noted in our original opinion, the court charged the jury that it could only consider the evidence we found to be improperly admitted as evidence of intent on the indecency count, "and for no other purpose."

Considering all of the foregoing, we conclude that there was no spillover effect that would require reversal of the conviction for sexual assault. Thrift's motion for rehearing is denied.

Believing that our original determination of the issue involving the photographs is correct, we overrule the State's motion for rehearing.

TOM GRAY, Chief Justice, concurring and dissenting on rehearing.

For the reasons stated in my original dissenting opinion, I would grant the State's motion for rehearing. Because the majority denies the State's motion for rehearing, I respectfully dissent.

I concur only in the result of the majority's decision to deny Thrift's motion for rehearing. I disagree, however, with the majority's decision to discuss and the discussion of the "prejudicial spillover" effect of the admitted evidence on the sexual assault conviction. First, I still believe there was no error in admitting the photographs. Second, Thrift did not argue in his initial brief that due to "prejudicial spillover," the admission of the photographs affected the conviction for sexual assault. Thrift may not have the burden to establish he was harmed by trial court error,[1] but a complaint about the effect of evidence that is specifically limited to one

1. *See Johnson v. State,* 43 S.W.3d 1, 4 (Tex. Crim.App.2001).

offense and not to be considered for another offense is a separate issue. Even the trial court made separate rulings regarding the effect of the evidence on the two offenses. Thrift did not ask us to decide this issue until rehearing. I do not know of any issue, but one effecting jurisdiction, that we must raise for him.

I would not address his complaint on rehearing. Because the majority addresses it, I concur only in the result reached by the majority on Thrift's motion for rehearing.