**MY THI TIEU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–08–01061–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 8, 2009.

Rehearing En Banc Overruled Nov. 19, 2009.

Brian W. Wice, Houston, TX, for Appellant.

Jessica Alane Caird, Houston, TX, for Appellee.

Panel consists of Justices ANDERSON, GUZMAN, and BOYCE.

## SUBSTITUTE MAJORITY OPINION

WILLIAM J. BOYCE, Justice.

Appellant My Thi Tieu filed a petition for discretionary review. Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our opinion of July 30, 2009, and issue this substitute opinion in its place.

Appellant challenges the effectiveness of her trial counsel in connection with her conviction for misdemeanor prostitution. After the jury found appellant guilty, the trial court assessed punishment as confinement for 180 days and a fine of $2,000. Appellant's sentence was suspended by the trial court and she was placed on community supervision for one year. Appellant contends trial counsel provided ineffective assistance by (1) failing to object to certain testimony from each of the State's four witnesses; (2) failing to object to improper jury argument during the State's closing argument; and (3) asking improper questions and eliciting damaging testimony during cross-examination of the arresting officer. We affirm.

## Background

Appellant was charged by information with misdemeanor prostitution stemming from an undercover investigation by the Houston Police Department at the Thai Garden massage parlor on December 6, 2007. Appellant filed a motion on May 21, 2008 seeking community supervision, and a motion requesting that the trial court assess punishment in the event of a guilty verdict. At trial, appellant entered a plea of not guilty in open court through her trial counsel on June 18, 2008.

The State presented the testimony of the arresting officer, Don Miller, and his supervisor, Sergeant Doug Hendrickson, during its case-in-chief. Appellant took the stand as the only defense witness. The State then called two additional officers involved in the investigation, Brian Surginer and Robert Price, as rebuttal witnesses to refute appellant's contention that a language barrier mistakenly led police to believe she had agreed to engage in sexual conduct for a fee.

Officer Miller testified without objection that (1) the Thai Garden placed an advertisement in a publication used by Houston police to locate massage parlors warranting investigation for prostitution; (2) someone had posted a message on a website that critiques massage parlors stating that the individual received masturbation at the Thai Garden; (3) Officer Miller was not asked to fill out a medical form upon his arrival at the Thai Garden as he would have been at a "legitimate massage parlor"; (4) appellant led him to a bedroom containing a mattress on the floor, but he was not provided with a towel to cover himself as he would have been at a "legitimate massage parlor"; (5) appellant told him to "get comfortable," which is sex industry code for "remove all of your clothing"; (6) appellant answered a call during Officer Miller's massage and told the caller—who asked if she performed "Thai slides," which involve sliding bare breasts along the customer's body—to "[j]ust come in and see"; (7) appellant undressed and continued massaging Officer Miller in the nude upon his agreement to pay an additional $100; (8) appellant performed a "Thai slide" on him; (9) appellant would not agree to perform oral sex or intercourse for a fee, but did agree to masturbate Officer Miller for $100; and (10) appellant offered to let Officer Miller "fuck her tits" as part of the activity included in the additional $100 fee. Officer Miller also testified that (1) he made an appointment with appellant over the telephone, at which time she spoke English; (2) appellant spoke English "very well" during his appointment; (3) appellant spoke English to

him and the other officers at the scene while they obtained her arrest information; and (4) it is common for masseuses arrested for prostitution to claim falsely after arrest that they do not speak English.

Officer Miller further testified that he had been a Houston Police Department officer for 13 years, including seven years in the Vice Division. During direct examination by the State about the responsibilities of Vice Division officers, the following exchange took place without objection:

STATE: Do you do child pornography?

MILLER: Not only child pornography, Internet porn, we work with the F.B.I. on a project called "Innocence Lost" where we target juvenile street prostitution. Or they'll have, usually it's pimps pimping out. You know, I've caught 14, 15–year–old girls. Same with organized prostitution where it's independents advertising on the back page, like where I got this one on, or other Web sites and they'll show up and it'll be a juvenile that's being pimped out by certain individuals. And when they—the F.B.I. steps in because when they cross state lines, it's a Federal offense.

\* \* \*

STATE: What are some of the ways that Vice learns about the different types of prostitution areas?

MILLER: There are some that are known, it's called a circuit or a track; and they're known throughout the United States. Some of these would include Bissonnet and the Southwest Freeway, Airline at Crosstimbers. These are well-known tracks where they'll bring in girls from all different states that work for maybe a week and then they'll move on to Dallas or move on to California. With the massage parlors, we see a lot of people coming from California.

STATE: When you say "they" bring them in, who are you talking about here?

MILLER: The street prostitution, usually it's the pimps will bring their girls, work an area for a period of time. If the money's good, which I've been told by the prostitutes the money's good in Houston, they'll stay. A lot of times they'll leave if their—if the prostitute's arrested. They'll just jump because they know we're not going to extradite them from California. It's not cost-effective. When they get caught, they'll fly to California. They know that Houston's not going to pick them up. We don't have the money to go pick them up for a misdemeanor crime.

STATE: You said—what about the massage parlors. You're talking about pimps and street prostitutes, who's buying from massage parlors?

MILLER: Massage parlors can be independents. They can be one person could own three or four. They are cash money making operations. That's to say that the majority of their money is going to be in cash, not reported. Some will—like [appellant] has a massage license. Some do. They'll go through the school, yet they'll masturbate because of the money. A hundred dollars extra on her massage, she's making 70 and you're paying that up front and then later on, you're paying a hundred. So, basically, she's making $170 an hour. That's not reported to anybody. That's cash. And figure 10, 20 customers a day, that's a lot of money.

Appellant points to the absence of objections during this exchange as an instance of trial counsel's ineffective assistance.

During cross-examination of Officer Miller, appellant's trial counsel asked him (1) how many times, if any, he had lied in his life; (2) if he had ever had sex outside of marriage; (3) if he had ever had sex with a prostitute while working undercover; and (4) if he masturbated in the restroom after appellant massaged him. Appellant's trial counsel also asked open-ended questions during cross-examination that allowed Officer Miller to repeat his direct testimony that appellant agreed to masturbate him for a fee. Additionally, the following exchange about which appellant complains took place during cross-examination of Officer Miller:

DEFENSE COUNSEL: Why didn't you pay [appellant] the fee so there would be evidence that she had agreed?

MILLER: I don't have to pay her the fee. Once again, the State says that she has to agree to it. It doesn't say that I have to pay her. Doesn't say I have to allow her to masturbate me. It just said that she has to agree to perform sexual contact, a sexual act, for a fee. Who would—no one's going to do that. No one's going to want some whore jerking them off and touching them. I'm sorry. Cop's not going to go that far.

DEFENSE COUNSEL: I pass the witness at this time, Your Honor.

Appellant points to this exchange as an instance of ineffective assistance.

The State next called Sergeant Hendrickson, who testified without objection that (1) Vice Division officers found an advertisement for the Thai Garden in a publication known to advertise parlors warranting investigation for prostitution; (2) he authorized an undercover investigation at the Thai Garden involving Officers Miller, Surginer, and Price; (3) Officer Miller called him from inside the Thai Garden to inform him that a "case was made" for prostitution; (4) "get comfortable" is sex industry code for "remove all of your clothing"; and (5) two other masseuses at the Thai Garden were detained and issued citations by police during their investigation, but were not arrested or criminally charged. Sergeant Hendrickson further testified that (1) appellant spoke fluent English during questioning after her arrest; and (2) it is common after a prostitution arrest for defendants to pretend not to speak English and raise "misunderstanding" as a defense.

Sergeant Hendrickson also testified that he had been with the Houston Police Department for 38 years, 18 of which were spent in the Vice Division. During direct examination by the State about other crimes related to prostitution, the following exchange took place without objection:

STATE: You said there's some crimes that go hand in hand. What kind of crimes go hand in hand with prostitution?

HENDRICKSON: Organized crime, drug related activities and there's a lot of money laundering and there's a lot of human trafficking that goes along with it. We do that, too.

STATE: What—what do you mean by human trafficking?

HENDRICKSON: Well, that's where people take a lot of these prostitutes and they move them from city to city, state to state, and sometimes it's against their will. Sometimes they're doing it because they're being threatened or their families are being threatened somewhere.

Appellant points to the absence of objections during this exchange as an instance of ineffective assistance.

Appellant testified to the following during her case-in-chief: (1) she had lived in

Harris County for 19 years; (2) she speaks only conversational English; (3) she is a licensed masseuse; (4) she did not use the phrase "get comfortable" in speaking to Officer Miller; (5) she leaves a towel on the massage bed for customers to cover themselves; (6) she received no phone call while massaging Officer Miller; (7) she took her dress off for a $100 fee, but not her bra and panties; (8) she did not perform any sexual act on Officer Miller; (9) she did not offer to let Officer Miller "fuck her tits"; and (10) Officer Miller lied in his testimony.

During cross-examination, the State asked appellant if she had taken the test for her massage license in Houston. After appellant testified that she had done so, the State pointed out that Austin is the only Texas city in which the test is translated for non-English speakers. Appellant also testified during cross-examination that (1) she has a Texas driver's license and that the driver's license test is administered in English; and (2) performing a massage in a bra and panties is not allowed by the Texas Department of State Health Services. Appellant later testified on re-direct examination that she took her massage licensing test in Austin. Appellant then rested her case.

To refute appellant's contention that she spoke only conversational English, the State called Officers Surginer and Price as rebuttal witnesses. Officer Surginer testified that (1) he had been a Houston Police Officer for 29 years; and (2) appellant answered the door of the Thai Garden and spoke "clear, good English" to him. Appellant complains on appeal about that portion of Officer Surginer's testimony in which he stated that (1) while Officer Miller was investigating appellant in one room of the Thai Garden, Officer Surginer was in an adjacent room of the parlor investigating another masseuse; (2) the mas-

seuse Officer Surginer was investigating said that she would masturbate him; and (3) Officer Surginer did not arrest the masseuse he was investigating because she would not agree to a specific fee for masturbating him.

Officer Price testified that (1) he had worked in the Vice Division of the Houston Police Department for 24 years; (2) he observed appellant speaking English "very well" without "a heavy accent or broken English"; and (3) it is common for a defendant in the sex industry to "later change[ ] her story and say[ ] she doesn't speak English." Appellant complains on appeal about Officer Price's response to a question regarding work he had done with the F.B.I.: "I'm assigned on a task force ... and we target the pimps that prey on the young girls, underage girls they get to prostitute for them." Appellant also complains on appeal about the State's reference to Officer Price's statement during closing argument: "You heard Officer Price get up there and say F.B.I. has to get involved because [a] cartel is running these operations."

The jury found appellant guilty as charged in the information and sentenced her to confinement for 180 days and a fine of $2,000, the maximum penalty allowed by the statute under which she was prosecuted. *See* Tex. Penal Code Ann. §§ 12.22, 43.02(c) (Vernon 2003). The trial court signed its judgment on the jury's verdict and sentence on June 18, 2008.

Appellant filed a motion with the trial court to substitute counsel and allow trial counsel to withdraw on June 24, 2008. The trial court granted appellant's motion, although the record is silent regarding when the trial court signed an order to that effect.

Appellant filed a motion for new trial through substitute counsel on July 17, 2008. The trial court signed an order on

July 18, 2008 setting appellant's new trial motion for an evidentiary hearing on August 28, 2008. At the hearing, the trial court admitted into evidence an affidavit signed by appellant's trial counsel and offered by appellant. The State also called appellant's trial counsel as a witness.

Trial counsel stated in his affidavit that the complained-of testimony from Miller, Surginer, and Hendrickson was "irrelevant" and "extremely prejudicial," and that his failure to object "was not the result of any trial strategy." Trial counsel's affidavit does not mention Officer Price's testimony or the State's closing argument. Trial counsel stated in his affidavit that the questions he asked Officer Miller during cross-examination "did not help the defense's case" and were "not the result of any trial strategy."

Trial counsel retreated from his affidavit when he testified at the motion for new trial hearing. Trial counsel testified that he believed the complained-of testimony of Officer Miller and Sergeant Hendrickson went to their training and experience and was admissible as part of their "daily activity."[1] Trial counsel further testified that he did not object to Officer Surginer's complained-of testimony because he believed it was more helpful to appellant than harmful. Trial counsel testified that he had no tactical reason for failing to object to Officer Price's testimony quoted above or to the State's reference to it during closing argument. Trial counsel

also testified that his intention during cross-examination of Officer Miller was to attack Officer Miller's credibility and professionalism and the strength of the State's case against appellant "because it's his words against her words."

Additionally, trial counsel opined that appellant deserved a new trial because "I wasn't that effective at trial." When questioned about why he thought he "wasn't that effective at trial," trial counsel testified that his assessment was based on the result of the trial rather than any failure to provide competent representation.

Following the hearing, the trial court granted appellant's motion as to punishment only in an order signed on August 28, 2008.[2] The trial court signed its judgment following appellant's new punishment trial on September 30, 2008, assessing punishment as confinement for 180 days and a fine of $2,000. The trial court's judgment suspended appellant's sentence and placed her on community supervision for one year.

Appellant filed her second motion for new trial on October 20, 2008. The trial court heard argument from appellant and the State on appellant's motion on October 31, 2008, and signed an order denying appellant's motion that same day.

## Standard of Review

We review claims of ineffective assistance of counsel under the familiar stan-

---

1. Appellant emphasizes that trial counsel used the phrase "daily activity" rather than "training and experience" in explaining at the motion for new trial hearing why he thought Officer Miller's and Sergeant Hendrickson's complained-of testimony was admissible. However, the relevant inquiry for a claim of ineffective assistance based on a failure to object is whether the testimony was admissible—not the precision of trial counsel's terminology. See McFarland v. State, 845 S.W.2d 824, 846 (Tex.Crim.App.1992), overruled on other grounds by Bingham v. State, 915

S.W.2d 9 (Tex.Crim.App.1994); Scantlin v. State, No. 14–06–00314–CR, 2007 WL 1892308, at *4 (Tex.App.-Houston [14th Dist.] July 3, 2007, no pet.) (mem. op., not designated for publication).

2. The trial court granted appellant's motion for new trial as to punishment because the jury originally assessed appellant's punishment despite appellant's May 21, 2008 motion requesting that the trial court assess punishment in the event of a guilty verdict.

dard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* an appellant must establish that (1) his trial counsel's representation was deficient; and (2) the deficient performance was so serious that it deprived the appellant of a fair trial. *Id.* at 687, 104 S.Ct. 2052. To establish these prongs, the appellant must prove by a preponderance of the evidence that counsel's representation fell below the objective standard of prevailing professional norms; and there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Id.* at 690–94, 104 S.Ct. 2052. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694, 104 S.Ct. 2052; *Ex parte Ellis,* 233 S.W.3d 324, 330–31 (Tex. Crim.App.2007). This test is applied to claims arising under the Texas Constitution as well as those arising under the United States Constitution. *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim. App.1986) (en banc). When, as here, a defendant asserts ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004), *superseded in part on other grounds by* Tex.R.App. P. 21.8(b).

### Analysis

Appellant contends that her trial counsel provided ineffective assistance by (1) failing to object to certain testimony from each of the State's four witnesses; (2) failing to object to improper jury argument during the State's closing argument; and (3) asking improper questions and eliciting damaging testimony during cross-examination of the arresting officer. The State contends that appellant fails to meet her burden under both prongs of *Strickland.*

Appellant complains on appeal specifically about trial counsel's conduct in eliciting or failing to object to the following testimony and argument: (1) Officer Miller's testimony regarding child pornography, the Innocence Lost project, prostitution "circuits" or "tracks," pimps bringing prostitutes to Houston from California, prostitutes telling him that "the money's good in Houston," and massage parlors being willing to perform masturbation for extra cash; (2) Officer Miller's reference to a "whore" and repetition of portions of his direct testimony during cross-examination; (3) Sergeant Hendrickson's testimony about crimes that "go hand in hand with prostitution," such as human trafficking; (4) Officer Surginer's testimony about another masseuse at the Thai Garden being willing to perform masturbation and his inability to arrest her because she wouldn't agree to a specific fee; (5) Officer Price's testimony about his assignment to a task force targeting pimps that prey on underage girls; and (6) the State's reference to Officer Price's statement during closing argument: "You heard Officer Price get up there and say F.B.I. has to get involved because [a] cartel is running these operations."

### I. The *Strickland* Standard

A criminal defendant is entitled to effective assistance of counsel. *Strickland,* 466 U.S. at 680, 104 S.Ct. 2052; *Stafford v. State,* 813 S.W.2d 503, 506 (Tex. Crim.App.1991) (en banc); *see also* U.S. Const. amend. VI. This right does not entitle a defendant to errorless counsel or counsel whose competency is judged by hindsight. *Stafford,* 813 S.W.2d at 506. Rather, this right affords a criminal defendant an attorney reasonably likely to render reasonably effective assistance. *Strickland,* 466 U.S. at 680, 104 S.Ct. 2052; *Stafford,* 813 S.W.2d at 506. When re-

viewing a claim of ineffective assistance, we look to the totality of the representation and not to isolated instances of error or to a single portion of the trial. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim. App.1999); *Rivera–Reyes v. State,* 252 S.W.3d 781, 788–89 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

When evaluating prejudice under *Strickland,* any constitutionally deficient acts or omissions will be considered in light of the totality of the evidence before the judge or jury. *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052; *Ex parte Ellis,* 233 S.W.3d at 331. We must presume, absent a challenge to the sufficiency of the evidence, that the judge or jury acted according to law. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. *Id.* at 696, 104 S.Ct. 2052.

Relying heavily on trial counsel's affidavit, appellant assails his performance at trial. She vigorously criticizes not only his inaction in failing to object to irrelevant testimony, but also his action in eliciting inappropriate and inadmissible testimony from Officer Miller during cross-examination. Appellant contends that *Strickland*'s first prong is satisfied because trial counsel's affidavit establishes that he had no reasonable trial strategy and provided objectively deficient representation.

Our review, however, encompasses more than trial counsel's affidavit. The State called trial counsel as its lone witness at the new trial hearing and questioned him about his representation of appellant. Trial counsel testified that his trial strategy consisted of attacking Officer Miller's credibility and thereby weakening the State's case. Trial counsel also testified that based on his 12 years of training and experience he believed that the jury would find appellant's testimony credible, and that by testifying she would improve her chances of establishing her innocence or, if found guilty, receiving community supervision. Trial counsel further testified that he (1) met with appellant numerous times over the 10 months preceding trial to prepare her to testify; (2) reviewed the offense report more than once; (3) reviewed the record in preparation for trial; (4) conducted routine discovery; and (5) visited the Thai Garden four or five times and interviewed other masseuses working there.

Appellant urges that trial counsel's affidavit establishes his objectively deficient representation, and that the trial court erred in crediting trial counsel's live testimony over his sworn affidavit. Appellant invites us to conclude that trial counsel's affidavit is more credible than his live testimony because the affidavit was generated before trial counsel was contacted by the State, and to hold that trial counsel's representation was deficient.[3]

 We note that a trial judge has discretion in appropriate circumstances to discount conclusory factual assertions in an attorney's affidavit proffered to establish ineffective assistance of counsel. *Charles,* 146 S.W.3d at 210 (citing Tex.R. Civ. P. 166a(c)). A trial judge is not required to believe factual assertions made in a sworn affidavit, even when they are uncontradict-

---

**3.** Appellant emphasizes trial counsel's testimony that the assistant district attorney who prosecuted appellant contacted trial counsel a few days before the hearing and asked, "[D]o you know that you could be exposed to liability?" This testimony was proffered to the trial judge, who had discretion to accord it whatever weight and credibility she chose in determining which portions, if any, of trial counsel's affidavit to believe. *See Charles,* 146 S.W.3d at 210 & 213.

ed. *See id.* at 213. A trial judge may believe all, some, or none of an affidavit. *Id.* By the time a claim for ineffective assistance reaches the courtroom, the attorney and former client may be aligned in their memories and positions. *Id.* at 210. Under these circumstances, it is particularly important that those memories and positions be tested via cross-examination. *Id.* Here, the trial court had to weigh both trial counsel's affidavit and his testimony at the new trial hearing. We must defer to the trial court's ruling to the extent that any reasonable view of the record will support that ruling. *Id.*

 In any event, it is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong. "There is no need for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* The court's purpose in reviewing an ineffectiveness claim is not to grade trial counsel's performance. *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* "Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.*

Following this teaching, we turn to *Strickland*'s second prong. This is the juncture at which the majority and the dissent part company.

In addressing *Strickland*'s prejudice requirement, the analysis below considers the totality of the evidence before the jury. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052; *Ex parte Ellis,* 233 S.W.3d at 331. The dissent undertakes no record analysis to determine whether there is a reasonable probability that the proceeding's result would have been different but for counsel's asserted deficiencies. *See Strickland,* 466 U.S. at 690–94, 104 S.Ct. 2052. Instead, the dissent presumes prejudice.

The circumstances here cannot be characterized as "[a]ctual or constructive denial of the assistance of counsel altogether" so as to justify a presumption of prejudice. *See id.* at 692, 104 S.Ct. 2052. Appellant's trial counsel repeatedly met with her before trial, conducted discovery, interviewed other masseuses working at the Thai Garden, and fully participated in all aspects of appellant's trial. This is not a situation in which trial counsel "entirely failed to subject the prosecution's case to meaningful adversarial testing" by, for example, declining to participate in jury selection; enter a plea; make an opening and closing argument; cross examine witnesses; make objections; offer a defense; request special jury instructions; or offer evidence regarding punishment. *See Cannon v. State,* 252 S.W.3d 342, 350 (Tex.Crim.App. 2008). These dissimilar situations cannot be made similar by equating the sleeping lawyer and the lawyer accused of being "asleep at the switch" when inadmissible testimony was proffered. Such reasoning would negate *Strickland*'s second prong whenever an ineffective assistance claim is predicated on trial counsel's failure to act.

The approach of eschewing analysis under *Strickland*'s second prong also is reflected in cases upon which the appellant relies for support. *See Brown v. State,* 974 S.W.2d 289, 296 (Tex.App.-San Antonio 1998, pet. ref'd) (Green, J., dissenting) ("In view of the entire record in this case, there is nothing to suggest that the result of the

trial would have been different had the claimed errors of counsel not occurred."); *see also Greene v. State,* 928 S.W.2d 119, 126–27 (Tex.App.-San Antonio 1996, no pet.). We decline to endorse this approach.

Other cases invoked by the appellant underscore the importance of examining the totality of the evidence under *Strickland*'s second prong. *See Wood v. State,* 260 S.W.3d 146, 149 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (new trial warranted based on ineffective assistance under circumstances in which "the evidence of guilt at trial is not overwhelming"); *Hall v. State,* 161 S.W.3d 142, 156 (Tex. App.-Texarkana 2005, pet. ref'd) ("Failing to object to the omission of an accomplice witness instruction allowed the jury to convict without any corroborating evidence."); *see also Fuller v. State,* 224 S.W.3d 823, 837 (Tex.App.-Texarkana 2007, no pet.) ("The State's case-in-chief consisted of the testimony of J.W. and four witnesses, each of whom testified in some manner that J.W. was a truthful and credible witness."); *Sessums v. State,* 129 S.W.3d 242, 246 (Tex.App.-Texarkana 2004, pet. ref'd) (failure to object to improper bolstering testimony was prejudicial "in a case with no physical evidence, no eyewitnesses, and no testimony from the victim"); *cf. Thrift v. State,* 134 S.W.3d 475, 479 (Tex.App.-Waco 2004) (reversing based on erroneous admission of evidence in case in which "[t]he evidence was not overwhelming that Thrift was guilty"), *aff'd,* 176 S.W.3d 221 (Tex. Crim.App.2005).

The totality of the record also can establish prejudice from ineffective assistance by demonstrating that the jury focused on a particular aspect of inadmissible evidence. *See Walker v. State,* 195 S.W.3d 250, 263 (Tex.App.-San Antonio 2006, no pet.) ("[T]he record quite clearly establishes that the jury focused on the stale conviction for assaulting a police officer. Less than ten minutes after the jury retired to deliberate, it sent a note asking for clarification of Walker's testimony about the arrest."). It may establish that the asserted instance of ineffective assistance was only one of multiple factors at issue. *See Taylor v. State,* 93 S.W.3d 487, 495–510 (Tex.App.-Texarkana 2002, pet. ref'd). Or it may establish that "[t]rial counsel's deficiency in failing to discover a key piece of evidence strikes at the heart of the effective assistance of counsel" in a case in which "[s]eeking and obtaining inculpatory—or exculpatory—statements in the defendant's own voice is an essential part of case investigation, preparation for trial, and trial strategy." *Johnson v. State,* 172 S.W.3d 6, 19 (Tex.App.-Austin 2005, pet. ref'd). Such circumstances are not present here.

As discussed more fully below, the totality of the record here defeats any contention that "the evidence of guilt at trial is not overwhelming." *Wood,* 260 S.W.3d at 149. The overwhelming nature of the evidence presented against appellant bears strongly on her claim of prejudice under *Strickland*'s second prong.

## II. Application of *Strickland's* Prejudice Prong

■ An appellant claiming ineffective assistance of counsel must identify on appeal objective facts in the record affirmatively proving that she was prejudiced by counsel's asserted incompetence. *See Bone v. State,* 77 S.W.3d 828, 836–37 & n. 29 (Tex.Crim.App.2002) (citing *Ladd v. State,* 3 S.W.3d 547, 570 (Tex.Crim.App. 1999), and *Mitchell v. State,* 989 S.W.2d 747, 748 (Tex.Crim.App.1999)). Each case must be judged on its own unique facts. *Davis v. State,* 278 S.W.3d 346, 353 (Tex. Crim.App.2009). A prejudice analysis un-

der *Strickland* is not identical to an analysis of sufficiency of the evidence. *Id.*

A person commits misdemeanor prostitution if she knowingly offers or agrees to engage in sexual conduct for a fee. Tex. Penal Code Ann. § 43.02(a)(1), (c) (Vernon 2003). "Sexual conduct" includes "sexual contact," or "touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." *Id.* § 43.01(3), (4) (Vernon 2003).

■ Reviewing appellant's contentions in light of the totality of the evidence, *see Strickland*, 466 U.S. at 695, 104 S.Ct. 2052, we believe the trial court acted within its discretion in concluding that appellant failed to establish a reasonable probability that the outcome of the guilt-innocence phase of appellant's trial would have been different but for trial counsel's asserted deficiencies.

Officer Miller testified that (1) the Thai Garden advertised in a publication known by Houston Police to market massage parlors dealing in prostitution; (2) a former Thai Garden patron posted a message on a website that critiques massage parlors stating that the patron received masturbation there; (3) Officer Miller was not asked to fill out a medical form upon his arrival at the Thai Garden as he would have been at a "legitimate massage parlor"; (4) appellant led him to a bedroom with a mattress on the floor, but did not provide him a towel to cover himself as he would have received at a "legitimate massage parlor"; (5) appellant told him to "get comfortable," which is sex industry code for "remove all of your clothing"; (6) in the middle of Officer Miller's massage, appellant told a caller over the telephone who asked if she performed "Thai slides" to "[j]ust come in and see"; (7) appellant removed her clothes and continued massaging Officer Miller in the nude for an additional $100 fee; (8) appellant performed a "Thai slide" on him; (9) appellant refused to perform oral sex or intercourse, but agreed to masturbate Officer Miller for $100; and (10) appellant offered to let Officer Miller "fuck her tits" as part of the activity included in this $100 fee.

Sergeant Hendrickson testified that (1) Vice Division officers found an advertisement for the Thai Garden in a publication known to market massage parlors dealing in prostitution; (2) he authorized Officers Miller, Surginer, and Price to perform an undercover investigation of the Thai Garden; (3) Officer Miller called him during the investigation to inform him that a "case was made" for prostitution; (4) "get comfortable" is sex industry code for "remove all of your clothing"; and (5) two other masseuses at the Thai Garden were detained and issued citations when appellant was arrested, but were not themselves arrested or criminally charged.

Appellant took the stand and testified to the following: (1) she had resided in Harris County for 19 years; (2) she speaks only conversational English; (3) she is a licensed masseuse; (4) she did not say the words "get comfortable" to Officer Miller; (5) she customarily leaves a towel on the massage bed for customers to cover themselves; (6) she did not answer a phone call while massaging Officer Miller; (7) she removed her dress for $100, but not her bra and panties; (8) she performed no sexual act on Officer Miller; (9) she did not ask Officer Miller if he wanted to "fuck her tits"; and (10) Officer Miller lied in his testimony.

However, the State impeached appellant on cross-examination by (1) asking her if she had taken her massage licensing test in Houston and—after she said that she had—pointing out that the test is translated for non-English speakers only in Aus-

tin; (2) obtaining an admission that she has a Texas driver's license and that the driver's license test is performed in English; and (3) obtaining an admission that massaging a customer while wearing only a bra and panties is forbidden by the Texas Department of State Health Services. Appellant later claimed on re-direct examination that she took her massage licensing test in Austin.

Furthermore, the State presented a significant amount of evidence that raised serious questions regarding appellant's veracity and credibility, particularly concerning her defense that Officer Miller misunderstood her because she did not speak English well. Officer Miller testified that (1) he had worked as a Houston Police Officer for 13 years, including seven in the Vice Division; (2) appellant spoke English to him when he made an appointment with her over the telephone; (3) appellant spoke English "very well" with him during his investigation; (4) appellant spoke English to all of the officers while they obtained her arrest information; and (5) it is common for masseuses arrested for prostitution to falsely claim after arrest that they do not speak English.

Sergeant Hendrickson testified that (1) he had worked for the Houston Police Department for 38 years, including 18 in the Vice Division; (2) appellant spoke fluent English after her arrest during interrogation; and (3) it is common after a prostitution arrest for defendants to pretend not to speak English and raise "misunderstanding" as a defense. Officer Surginer testified that (1) he had been a Houston Police Officer for 29 years; and (2) appellant spoke "clear, good English" to him when she answered the door to the Thai Garden. Officer Price testified that (1) he had worked in the Vice Division of the Houston Police Department for 24 years; (2) he observed appellant speaking

English "very well" without "a heavy accent or broken English"; and (3) it is common for a defendant in the sex industry to "later change[ ] her story and say[ ] she doesn't speak English."

All of the evidence outlined above is independent of the testimony that appellant says her trial counsel should have objected to or should not have elicited. Appellant does not contend that her trial counsel should have objected to the evidence outlined above, or that he was ineffective because he did not do so. Appellant does not contend that the evidence outlined above was inadmissible.

To support her claim of prejudice, appellant directs our attention to trial counsel's statement during the motion for new trial hearing that "I wasn't that effective at trial." However, when questioned about this statement, trial counsel stated that his assessment was based on the result of the trial rather than any failure to provide competent representation.

Considering the overwhelming evidence of appellant's guilt and the substantial evidence before the jury that appellant's self-serving testimony was not credible, along with appellant's inability to specify any objective evidence of prejudice, the trial court did not abuse its discretion in concluding that appellant failed to establish that the result of the guilt-innocence stage of her trial would have been different but for trial counsel's asserted deficiencies. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052; *Ex parte Ellis,* 233 S.W.3d at 331; *Bone,* 77 S.W.3d at 836–37 & n. 29.

A number of cases underscore this conclusion. *See Hernandez v. State,* No. 14–07–00124–CR, 2008 WL 2262046, at *8 (Tex.App.-Houston [14th Dist.] May 29, 2008, pet. ref'd) (mem. op., not designated for publication), *cert. denied,* — U.S. ——, 129 S.Ct. 2164, 173 L.Ed.2d 1162 (2009); *Crawford v. State,* No. 11–03–

00056–CR, 2004 WL 292046, at *2 (Tex. App.-Eastland Feb. 12, 2004, no pet.) (not designated for publication); *Davis v. State*, No. 01-01-00624–CR, 2002 WL 31388735, at *5 (Tex.App.-Houston [1st Dist.] Oct. 24, 2002, pet. ref'd) (mem. op., not designated for publication); *Jackson v. State*, No. 08-01-00090–CR, 2002 WL 1874857, at *10 (Tex.App.-El Paso Aug. 15, 2002, pet. ref'd) (not designated for publication); *see also Lane v. State*, 257 S.W.3d 22, 29 (Tex. App.-Houston [14th Dist.] 2008, pet. ref'd); *Vasquez v. State*, No. 14-07-00802–CR, 2009 WL 943868, at *12 (Tex.App.-Houston [14th Dist.] Apr. 9, 2009, no pet.) (mem. op., not designated for publication); *Walker v. State*, No. 14-07-00435–CR, 2008 WL 5341295, at *4 (Tex.App.-Houston [14th Dist.] Dec. 23, 2008, pet. ref'd) (mem. op., not designated for publication); *Hayward v. State*, No. 14-01-01185–CR, 2006 WL 162582, at *5 (Tex.App.-Houston [14th Dist.] Jan. 24, 2006, no pet.) (mem. op., not designated for publication).

The defendant in *Hernandez* was convicted of capital murder and sentenced to life imprisonment. *Hernandez*, 2008 WL 2262046, at *1. On appeal, the defendant raised numerous challenges, including a challenge to the effectiveness of trial counsel on three different grounds. *Id.* at *1, *6.

The evidence—the sufficiency of which was not challenged on appeal—established that the defendant (1) shot the complainant in the back of the head while the complainant sat in his car; (2) took cash from the complainant; (3) moved the complainant's body from the driver's seat of the car and drove away in it; (4) dumped the complainant's body in a church parking lot, where it was discovered the next day; and (5) abandoned the complainant's car in a convenience store parking lot. *Id.* at *1. An informant notified police that the defendant may have been involved in the complainant's death; police questioned the defendant about the murder after his arrest for an unrelated offense. *Id.*

Early on during the videotaped police interviews, the defendant provided a written statement that he had witnessed the complainant's murder. *Id.* After the first interview, the defendant led police to several locations where he indicated that evidence related to the murder was hidden, but no evidence was recovered. *Id.* at *2. The defendant briefly escaped police custody but was recaptured and transported to police headquarters. *Id.* In later interviews, the defendant admitted killing the complainant and asserted that the gun "just went off" while he and the complainant were struggling over it during a drug transaction. *Id.* Following this confession, the defendant gave police details regarding locations where some physical evidence of the murder could be found. *Id.*

The defendant contended that trial counsel was ineffective for failing to (1) preserve error on his motion to suppress; (2) exclude inadmissible prior convictions; and (3) object to 12 different instances of damaging testimony from multiple witnesses. *Id.* at *6–*8. These statements included testimony that (1) the defendant had been in jail previously; (2) the defendant had been seen in the area of the murder; (3) people in the neighborhood thought that the defendant had some role in the murder; (4) people implicated in the murder by the defendant had alibis for the time of the murder; (5) described the defendant's brief escape from custody; and (6) the defendant made false statements to police during their investigation of the murder. *Id.* at *7–*8.

After resolving the first two ineffectiveness claims via the first prong of *Strickland*, the court held with regard to the failure to object to damaging testimony from numerous witnesses that "notwith-

standing any alleged error in failing to object to these statements, we cannot say that a reasonable probability exists that the result of appellant's trial would have been different had his counsel objected to them." *Id.* at *8. "And, even if his trial counsel were deficient by failing to object to some of these statements, he has not established that, but for this deficiency, the outcome of the proceeding would have been different." *Id.*

This case is similar to *Hernandez* in that (1) there is overwhelming untainted and unchallenged evidence of appellant's guilt; and (2) the ineffectiveness rejected on prejudice grounds stems from several instances of damaging and assertedly inadmissible testimony from multiple witnesses. *See id.* at *1–*2, *7–*8. Notwithstanding the admission of this assertedly improper evidence, the prejudice prong was not satisfied in *Hernandez*. The same conclusion applies here.

In *Crawford*, the defendant was convicted of delivering less than one ounce of cocaine and sentenced to confinement for 10 years. *Crawford*, 2004 WL 292046, at *1. The defendant challenged the effectiveness of trial counsel on two grounds on appeal, as well as the proportionality of his sentence to the offense of which he was convicted. *Id.* at *1–*2.

The defendant asserted that his trial counsel was ineffective for failing to object to the State's (1) improper reference to the penalty phase of the trial during closing argument in the guilt/innocence phase of the trial; and (2) two references to the defendant as a "pimp" during the introduction of the defendant's prior criminal record and closing argument in the penalty phase of the trial. *Id.* at *1. The court of appeals held that "even if appellant's trial counsel's representation was deficient, appellant has failed to demonstrate that, but for counsel's deficient performance, there

is a reasonable probability that the result of the proceeding would have been different." *Id.* at *2. The court based its conclusion on the overwhelming evidence against the defendant found in the record: (1) he delivered the cocaine to undercover police officers; (2) he had previously been convicted of five felonies, including three controlled substance felonies; and (3) he had spent nine of the previous 12 years in prison. *Id.*

This case is similar to *Crawford* in that (1) there is overwhelming untainted and unchallenged evidence supporting the decision reached by the jury; and (2) the ineffectiveness rejected on prejudice grounds stems from the assertedly inadmissible and improper use of derogatory language in open court when describing the events surrounding appellant. *See id.* at *1–*2. Notwithstanding the use of this language, the prejudice prong was not satisfied in *Crawford*. The same conclusion applies here.

The defendant in *Davis* pled guilty to two counts of aggravated sexual assault, and was sentenced to confinement for 99 years and fined $10,000 for each count. *Davis*, 2002 WL 31388735, at *1. The defendant contended on appeal that his trial counsel was ineffective for failing to (1) object to two arguments by the State during closing arguments; and (2) request a limiting instruction concerning otherwise inadmissible underlying facts of an expert's opinion. *Id.*

With respect to trial counsel's failure to request a limiting instruction, the underlying facts at issue were portions of letters the defendant wrote in response to personal ads that the State used when cross-examining the defendant's psychologist during the punishment phase of the trial. *Id.* at *4. The defendant described these 20 pages of the record as "the most injurious and prejudicial evidence the prosecu-

tor elicited, aside from the offense itself." *Id.* In one of these letters, the defendant wrote: "You sound like just the whore I have been waiting for." *Id.* The State referred to the letters during closing argument as stating that the defendant "wants every woman to be his cock-sucking whore." *Id.* at *5.

The court held that, under the circumstances of the case, "even if trial counsel was deficient for not requesting a limiting instruction, appellant did not meet his burden to show that he was more severely punished because of the lack of that instruction." *Id.* The same conclusion applies here. This conclusion is underscored because the trial court granted a new trial as to punishment so that her punishment would be decided by the trial court rather than the jury; appellant has not shown she was more severely punished because of trial counsel's asserted errors.

The defendant in *Jackson* was convicted of aggravated assault and sentenced to confinement for 10 years. *Jackson,* 2002 WL 1874857, at *1. On appeal, the defendant challenged the factual sufficiency of the evidence, the jury charge, and the effectiveness of trial counsel. *Id.* at *2, *5–*6.

The evidence consisted primarily of testimony from the complainant and the defendant, with some corroborating evidence offered by persons who did not witness the altercation at issue. *Id.* at *1–*4. Considering that "[w]hat lay at issue was who had begun the altercation—that is, whether appellant had acted in self-defense," the most vital disputed issues of the case were characterized as a "swearing match" by the defendant. *See id.* at *3–*4, *6.

The testimony and evidence establishing the defendant's guilt included (1) the defendant's testimony that he may have used a weapon during the altercation; (2) the defendant's admission that he hit the complainant; (3) the complainant's testimony that the defendant pushed her into his residence, straddled her, began hitting her in the head with a flashlight, beat her into unconsciousness, and told her that he was going to beat her to death; (4) the complainant's testimony that the defendant struck her again once she regained consciousness, at which point she stabbed him; (5) the complainant's testimony that after she stabbed the defendant he bit her and beat her into unconsciousness with the flashlight again; (6) the complainant's testimony that she was naked and in pain once she regained consciousness after the second beating, and ran naked to a detention center for help; (7) the complainant's testimony that she used her knife in self-defense; (8) a nurse's testimony that the complainant's injuries the next morning during examination were "fresh" and consistent with the complainant's narrative of events; (9) a detective's testimony that the complainant's injuries were "fresh," and that the flashlight that the complainant claimed had been used to beat her was found at the defendant's residence; (10) the detective's testimony that the cut on top of the complainant's head was consistent with being hit by a flashlight; (11) photos of the complainant's and the defendant's injuries and blood found in the defendant's residence; (12) testimony that the defendant's injuries were minor; (13) the complainant's testimony that the defendant had perpetrated violence against her during their previous relationship; and (14) the defendant's admission that he and the complainant had a volatile relationship and that she had called for aid several times. *Id.* at *1–*4.

In addition, the complainant highlighted inconsistencies in the defendant's testimony to call his credibility into question: (1) the defendant initially testified that he did not hit the complainant with an object and

that she suffered the cut on her head when he threw her against a chair, but later he testified that he may have used a flashlight to hit the complainant; and (2) the defendant told police after his arrest that he told the complainant to leave and then went to sleep, but he testified in court that he told the complainant to lay down and the two of them went to sleep together. *Id.* at *4.

To address this evidence establishing the defendant's guilt, the defendant asserted that he acted in self-defense and presented the following evidence to refute the State's contentions: (1) his testimony that the complainant voluntarily visited his residence and the two shared a bottle of wine, after which the complainant asked him for money; (2) his testimony that he had sex with the complainant, after which she again asked him for money; (3) his testimony that the complainant began the altercation by stabbing him twice after being rebuffed in her requests for money; and (4) his testimony that he had never been convicted of domestic violence against the complainant previously, and had been arrested only once in connection with any of the incidents to which she testified. *Id.* at *1–*4. The defendant also highlighted inconsistencies in the complainant's recitation of the altercation. *Id.* at *4.

The defendant asserted multiple ineffective assistance claims based upon trial counsel's performance before and during trial. *Id.* at *7. While the court of appeals resolved most of the defendant's ineffective assistance claims via the objective deficiency prong of *Strickland*, it relied upon the prejudice prong to resolve two of his claims of ineffectiveness at trial: (1) failure to urge his motion for a speedy trial; and (2) failure to object to improper jury argument. *Id.* at *8–*10.

Assuming that the first prong of *Strickland* had been met in both of these in-stances, the court held that the defendant failed to establish a reasonable probability that these errors contributed to his conviction. *Id.* The court specifically noted that "counsel repeatedly attempted to discredit [the complainant] . . . brought out inconsistencies in [the complainant's] recollections . . . [and] provided an alternative theory, favorable to his client, of the chronology of the events." *Id.* at *10. The court held that "based on the totality of the representation, we believe that appellant received effective assistance." *Id.*

This case is similar to *Jackson* in that (1) it may be characterized as a "swearing match" between appellant and the complainant with respect to the vital disputed issues; (2) there is substantial untainted and unchallenged evidence of appellant's guilt; (3) appellant was not precluded from asserting her defense by counsel's asserted ineffectiveness; and (4) appellant's defense included attacking the credibility of the complainant. *See id.* at *1–*4, *8–*10.

As in the cases summarized above, the untainted evidence of appellant's guilt in this case is overwhelming, and confidence in the outcome of appellant's trial is not undermined on this record. *See Hernandez,* 2008 WL 2262046, at *8; *Crawford,* 2004 WL 292046, at *2; *Davis,* 2002 WL 31388735, at *5; *Jackson,* 2002 WL 1874857, at *10; *see also Lane,* 257 S.W.3d at 29 (inadmissible expert testimony effectively instructing jury that complainant's testimony regarding sexual assaults by appellant during complainant's childhood was credible did not satisfy *Strickland*'s prejudice prong in light of untainted testimony of complainant and her sister implicating appellant); *Vasquez,* 2009 WL 943868, at *12 (inadmissible expert testimony regarding firearms and ballistics testing of murder weapon did not satisfy *Strickland*'s prejudice prong in light of untainted testimony of medical examiner, investigating

officer, and accomplice implicating appellant); *Walker*, 2008 WL 5341295, at *4 (complained-of evidence that appellant was involved in collision while driving car used in earlier bank robbery did not meet *Strickland*'s prejudice prong in light of testimony from complainant, bank guard, and vehicle owner implicating appellant); *Hayward*, 2006 WL 162582, at *5 (hearsay testimony from crime scene investigator regarding location of evidence discarded by appellant did not meet *Strickland*'s prejudice prong in light of evidence that appellant was arrested driving same car reported speeding away from murder scene, appellant's admission that she was present at murder scene and wrestled with complainant, and expert testimony linking appellant to murder).

Because the trial court acted within its discretion in concluding that appellant did not establish a reasonable probability that the result at trial would have been different but for trial counsel's assertedly deficient performance, a new trial is not warranted. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Ex parte Ellis*, 233 S.W.3d at 330–31; *Charles*, 146 S.W.3d at 208; *see also Hernandez*, 2008 WL 2262046, at *8; *Crawford*, 2004 WL 292046, at *2; *Davis*, 2002 WL 31388735, at *5; *Jackson*, 2002 WL 1874857, at *10.

We overrule appellant's issue regarding denial of her motion for new trial based on ineffective assistance of counsel.

### Conclusion

The trial court's order denying appellant's motion for new trial is affirmed.

ANDERSON, J., dissenting.

## SUBSTITUTE DISSENTING OPINION

JOHN S. ANDERSON, Justice.

I respectfully dissent.[1] Trial counsel's performance was tantamount to no counsel at all. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984); *Burdine v. Johnson*, 262 F.3d 336, 345 (5th Cir.2001); *Walker v. Tex. Dept. of Family & Protective Serv.*, —— S.W.3d —— (Tex.App.-Houston [1st Dist.] 2009, no. pet. h.) (Jennings, J., dissenting). Where counsel allows in a deluge of dangerously prejudicial and irrelevant evidence without objection, a client is no better served than if she had no counsel at all. I would hold the trial court abused its discretion by denying appellant's motion for new trial as to the guilt/innocence stage of her trial.

Generally, a criminal defendant asserting claims for ineffective assistance of counsel based on the errors and omissions of his attorney must show that his attorney's performance was deficient and below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. However, the Supreme Court in *Strickland* explained that in the context of certain ineffective assistance of counsel claims, "prejudice is presumed." *Id.* at 692, 104 S.Ct. 2052. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Id.*

The Constitution's guarantee of assistance of counsel cannot be satisfied by

1. This dissent was filed after the original opinion issued. Pursuant to Rule 50 of the Texas Rules of Appellate Procedure, "[w]ithin 60 days after a petition for discretionary review is filed with the clerk of the court of appeals that delivered the decision ... any of the justices who participated in the decision may issue a concurring or dissenting opinion."

mere formal appointment. *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). That a person who happens to be a lawyer is present at trial alongside the accused is not enough to satisfy the constitutional command. *Strickland,* 466 U.S. at 685, 104 S.Ct. 2052. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results. *Id.* If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing—then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. *Cronic,* 466 U.S. at 659, 104 S.Ct. 2039.

I would hold in this case there was a breakdown in the adversarial process justifying a presumption that appellant's conviction was insufficiently reliable to satisfy the Constitution. Counsel failed to object to testimony and closing arguments connecting appellant with human trafficking, child pornography, drug cartels, and prostitution. Specifically, the testimony regarding the activities of the vice squad was unduly prejudicial and irrelevant. Counsel's failure to object to this testimony is inexcusable. Appellant was essentially tarred and feathered by this irrelevant testimony. The jurors were given the impression she was connected with a seedy underworld of multifarious criminal enterprises. Furthermore, counsel stated in his own affidavit, entered into evidence during appellant's hearing on her motion for new trial, that this testimony was irrelevant and not the result of any trial strategy. The relevant portion of counsel's affidavit is the following:

### 1. Failure to Object to Inadmissible Evidence: Officer Miller

My failure to object to that testimony set out at pages 7–9 of the motion for new trial was not the result of any trial strategy. I recognize that this testimony was irrelevant to the ultimate issue of whether Ms. Tieu had agreed to engage in sexual contact for a fee and was extremely prejudicial to the defense.

### 2. Asking Irrelevant and Improper Questions During Cross–Examination of Officer Miller

I recognize that those questions that I asked during my cross-examination of Officer Miller that are set out at pages 11–12 of the motion for new trial did not help the defense's case. My conduct was not the result of any trial strategy.

### 3. Failure to Object to Inadmissible Evidence: Sgt. Hendrickson

My failure to object to that testimony set out at pages 12–13 of the motion for new trial was not the result of any trial strategy. I recognize that this testimony was irrelevant to the ultimate issue of whether Ms. Tieu had agreed to engaged in sexual contact for a fee and was extremely prejudicial to the defense.

### 4. Failure to Object to Inadmissible Evidence: Sgt. Surginer

My failure to object to that testimony set out at pages 13–14 of the motion for new trial was not the result of any trial strategy. I recognize that this testimony was irrelevant to the ultimate issue of whether Ms. Tieu had agreed to engage in sexual contact for a fee and was extremely prejudicial to the defense.

It was only upon prodding by the State during the hearing on the motion for new trial that counsel admitted in "retrospect" his actions could have constituted some form of trial strategy. Ultimately, counsel could provide no real explanation for his lack of action during trial. Where counsel cannot provide a valid explanation for hap-

less representation, it is logical to equate his representation to that of an unconscious lawyer. Counsel's representation was on par with the infamous sleeping lawyer cases. *See Burdine,* 262 F.3d at 345. Because I would hold counsel's representation was a constructive denial of appellant's Sixth Amendment right to counsel, I would also hold this case merits a presumption of prejudice. *See id.*

Appellant did not receive the meaningful assistance of counsel as envisioned by the Sixth Amendment. Counsel was not merely incompetent, but inert, accordingly prejudice must be presumed. *See Strickland,* 466 U.S. at 685, 104 S.Ct. 2052. Therefore, I would hold the trial court erred in denying appellant's motion for a new trial as to guilt/innocence. Furthermore, I would remand this case to the trial court in order to allow appellant to receive a fair trial—one where appellant receives the benefits of the adversarial process as required by the Constitution.

Defendant was so irretrievably tainted by the ineptitude of her counsel that the only remedy to purge the taint is a new trial.