

# NUMBER 13-12-00046-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ALQUER DUARTE,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 221st District Court
of Montgomery County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellant, Alquer Duarte, was convicted of possession of methamphetamines. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West 2010). A jury sentenced Duarte to forty years' incarceration. *See id.* Duarte argues three issues on appeal: (1) that the evidence was insufficient to corroborate the accomplice witness's testimony;

(2) the trial court erred in admitting evidence of extraneous offenses; and (3) the trial court erred in admitting evidence that Duarte's father had been arrested and convicted of methamphetamine trafficking. We affirm.

## I. BACKGROUND[1]

Officer Jason Dunn is an undercover investigator for the Houston Police Department Narcotics Division. In January 2011, he let it be known through his street connections that he was interested in purchasing large quantities of methamphetamine. A person named "Kike" eventually called Dunn from a cell phone associated with the number (786) 255-1020 and offered to sell him methamphetamine. Officer Dunn and "Kike" agreed to meet in a Chili's parking lot to make the transaction.

On February 2, 2011, Officer Dunn parked his vehicle in the Chili's parking lot. Hanner Pineda entered Dunn's pickup on the passenger side, and Duarte went into the backseat. Pineda introduced Duarte as "Kike" and explained that Pineda was there to act as a translator because Duarte did not speak English. Officer Dunn "knew this wasn't right" because he recognized Pineda's voice as the "Kike" he had spoken to on the phone. He also knew that Duarte spoke English from his undercover investigation. However, Officer Dunn did not question that at that moment. Pineda sold Officer Dunn one ounce of methamphetamine. Officer Dunn gave Pineda $1,100 for the drugs, and Pineda promptly handed the money over to Duarte in the backseat. Duarte remained silent throughout the transaction.

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

Five days later on February 7, 2011, Officer Dunn called "Kike's" cell phone number, the -1020 number, to negotiate a larger purchase of methamphetamines. No one answered. However, someone promptly called Officer Dunn back from the -1020 number and identified himself as "Kike." Officer Dunn recalled that this voice did not sound like Pineda's voice. "Kike" and Officer Dunn agreed that Dunn would purchase one pound of methamphetamines for $16,500 in a Lowe's parking lot the next day. Officer Dunn later received a call from "Kike" from a cell phone with the number (832) 347-7515. Kike informed Officer Dunn that the -7515 number was his new cell phone number and that he no longer used the -1020 number.

Officer Dunn called the -7515 number to finalize the details about the one pound sale of methamphetamine. No one answered, but Pineda later called to follow-up. On February 8, 2011, Officer Dunn purchased the pound of drugs from Pineda in a Lowe's parking lot for $16,500. Duarte was not present. Shortly after the exchange, Officer Dunn called Kike to purchase 2.5 pounds of methamphetamine later that same afternoon. This time, after the drugs were exchanged in the Lowe's parking lot, officers arrested both Pineda and Officer Dunn (Dunn was arrested to maintain his undercover status so that law enforcement could keep pursuing Duarte). Authorities searched Pineda's home and found additional methamphetamine, in addition to the $16,500 in cash from the morning's transaction.

On March 3, 2011, law enforcement obtained a warrant to search Duarte's home. Officers did not find any drugs, drug paraphernalia, or money there, but they did find four cell phones. Two of the four cell phones were linked to the -1020 and -7515 numbers, respectively.

3

Pineda testified at trial. He explained that he had known Duarte since childhood and that Duarte recruited him into the drug business. In short, Duarte gave Pineda instructions on when and where to deliver the methamphetamines. Pineda testified that although he set up the initial sale of drugs to Officer Dunn in the Chili's parking lot, Duarte himself arranged the larger purchases of methamphetamines on the phone with Officer Dunn.

A jury found Duarte guilty of possession of methamphetamines. The trial then proceeded to the punishment portion of the trial. Special Agent Marco Saltirelli, with the Department of Homeland Security, Immigration and Customs Enforcement Division (ICE), testified that Duarte had been previously deported to Mexico. On cross-examination, Special Agent Saltirelli admitted that Duarte was not deported because of any particular crime he committed, but rather because of his citizenship status. The State then requested permission to present another witness to explain how Duarte was found by ICE in the first place:

| | |
|---|---|
| The State: | Judge, based upon [Duarte's counsel's] questioning of the agent, basically implying that there was no criminal activity involved with his deportation, I would like to put on Agent Bryson to talk about the reason they deported him, was he was found in his father's home when the DEA did a bust on his father. |
| The Court: | I think that is fine. It is punishment. You can make your objection for the record. |
| Duarte's Counsel: | Yes, I would object. I think it is an attempt by the State to use the criminal offenses of the father against the son. And so I object to the introduction of testimony about the father's criminal activity because I think it would unfairly prejudice the jury in view of this defendant. |

4

The Court:      I mean, I think that the standard on punishment . . . is whether or not it is relevant to any issue. And I think that knowing how they came in contact to know the Defendant might be relevant . . . .

Agent John Bryson from the Drug Enforcement Administration then testified that authorities deported Duarte after he was found in the home of his father, Don Carmelo Duarte, during a drug raid. Carmelo was arrested for methamphetamine trafficking after authorities performed a legal search of his home and found an AR-15 assault rifle, among other weapons. Carmelo is currently serving a federal prison term for that offense.

Duarte was sentenced to forty years' incarceration, and subsequently filed this appeal.

## II. ANALYSIS

### A. Accomplice Witness Testimony

In his first issue, Duarte argues that there is legally insufficient evidence to connect him to the drug transactions which occurred at the Lowe's parking lot.[2]

### 1. Applicable Law and Standard of Review

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). In other words, the test for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony

---

[2] Duarte appears to concede that he fully participated in the drug deal at the Chili's parking lot in January of 2011.

of other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). The corroborative evidence need not be sufficient in itself to establish guilt, nor must it directly link the accused to the commission of the offense. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (citing *Hernandez*, 939 S.W.2d at 176). We view the evidence in the light most favorable to the jury's verdict. *Brown*, 270 S.W.3d at 567.

An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Brown*, 270 S.W.3d at 567; *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (citing TEX. PENAL CODE ANN. § 7.02(a) (West 2011)). Here, Pineda provided the accomplice testimony. Thus, for the conviction to rest upon his testimony, "there must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment." *Brown*, 270 S.W.3d at 567 (internal quotations omitted) (emphasis in original); *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (en banc).

### 2. Analysis

Although Duarte concedes that he was present during the drug transaction at the Chili's parking lot, he argues that there is no evidence to link him to the drug deals in the Lowe's parking lot besides Pineda's testimony. We disagree. Pineda's testimony aside, there is some non-accomplice evidence which tends to connect Duarte to the sale of methamphetamines at Lowe's. *Brown*, 270 S.W.3d at 567; *McDuff*, 939 S.W.2d at 613. First, Duarte was present at the initial drug purchase in the Chili's parking lot and

6

accepted the money Officer Dunn offered to purchase the drugs. Second, Officer Dunn testified that he had phone conversations with someone from the telephone numbers -1020 and -7515 to set up the Lowe's drug deals, and two cell phones with those numbers were found during the search of Duarte's home.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there existed some non-accomplice evidence which tended to connect Duarte to the drug transactions in question and therefore corroborate Pineda's testimony. *Brown*, 270 S.W.3d at 567. We overrule Duarte's first issue.

## B. Admission of Extraneous Offenses

In his second issue, Duarte argues that the trial court erred by allowing Pineda to testify about the different times he sold drugs for Duarte. Duarte argues that allowing evidence of these extraneous offenses constituted an abuse of discretion.

### 1. Applicable Law and Standard of Review

Rule 404(b) of the Texas Rule of Evidence provides that: "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as . . . identity." *See* TEX. R. EVID. 404(b). "Extraneous offenses are relevant to the issue of identity if there are distinguishing characteristics common to both the extraneous offense and the offense for which the defendant is on trial or if there is a high degree of similarity so as to earmark them as the handiwork of the accused." *See Reed v. State*, 751 S.W.2d 607, 611 (Tex. App.—Dallas 1988, no pet.) (citing *Castillo v. State*, 739 S.W.2d 280, 289 (Tex. Crim. App. 1987)). Before a court can admit evidence

7

regarding extraneous offenses to prove identity, identity must be a contested matter. *See id.*

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the decision is within the "zone of reasonable disagreement," then there is no abuse of discretion. *See id.* at 343–44.

### 2. Analysis

During trial, Pineda testified about the manner and means in which he worked for Duarte. He explained that Duarte would initially call him regarding a particular drug deal. Pineda would then obtain the drugs from Duarte, make the delivery, and return the money to Duarte. Pineda opined that he did this for Duarte approximately eight different times before he was caught and arrested. This scenario matched how Officer Dunn described how most drug transactions took place:

| Officer Dunn: | Basically, from my experience, one person, the person that is higher up, will take the order, talk about the money, do that kind of thing. Then he will relay the information to his associate, which we call the runners. And they are the ones that actually put their hands on the drugs, deliver the drugs, take the money. They do all the dirty work, basically. |
|---|---|

Duarte argues that Pineda's testimony regarding the numerous times they conducted drug deals together was inappropriate evidence of extraneous offenses. Duarte contends that this testimony was improper because it was used to show character conformity with the allegation that Duarte was, essentially, a drug dealer. *See* Tex. R. Evid. 404. Duarte further argues that identity is not disputed because

8

"there was no issue that Pineda knew [Duarte]." However, the State correctly points out that the concern is whether Officer Dunn could correctly identify "Kike" as Duarte.

We agree that the identity of "Kike" was at issue. The State had to prove that the "Kike" who negotiated the sale of methamphetamines with Officer Dunn on the telephone was, in fact, Duarte. The trial court established that it was "going to find on the record that identity has become a disputed issue in this case" and admonished the jury that the extraneous offenses should only be considered for the purposes of identifying Duarte as "Kike."[3] Based on the foregoing, we hold that the trial court did not abuse its discretion when it allowed Pineda to discuss Duarte's extraneous offenses. We overrule Duarte's second issue.

## C. Admission of Duarte's Father's Convictions

In his third issue, Duarte argues that evidence of his father's conviction of drug possession and current federal prison term should not have been admitted into evidence during the punishment phase of the trial.

### 1. Applicable Law and Standard of Review

We review a trial court's decision to admit punishment evidence under an abuse-of-discretion standard. *In re Davis*, 329 S.W.3d 798, 802 (Tex. Crim. App. 2010); *De La Paz*, 279 S.W.3d at 343. Article 37.07 of the Texas Code of Criminal

---

[3] The trial court issued the following jury instruction: "You are instructed that if there is any testimony before you in this case regarding the defendant's having committed another offense(s) or bad act(s) other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense(s) or bad act(s), if any were committed, and even then you may only consider the same in determining motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other reason."

Procedure outlines what kind of evidence can be considered during the punishment phase of a trial:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, section 3(a)(1) (West 2011).

**2. Analysis**

The trial court specifically stated that it believed that "how [law enforcement] came in contact to know the Defendant" was relevant to the punishment portion of the trial. And evidence of one's associations can be considered relevant to sentencing. *See Beasley v. State*, 902 S.W.2d 452, 456–57 (Tex. Crim. App. 1995) (allowing the admission of one's gang affiliation into evidence); *Ybarra v. State*, 775 S.W.2d 409, 411 (Tex. App.—Waco 1989, no pet.) (same). Further, as the State points out, "evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 1999). "A party opens the door by leaving a false impression with the jury that invites the other side to respond." Here, Agent Saltirelli's testimony left the impression that Duarte was previously deported to Mexico because of his citizenship status and not because of any particular crime he committed. Agent Bryson's testimony was used to give some background to the way Duarte was found by immigration officials in the first

10

place—during a methamphetamine raid of his father's home, which was similar to the very crime of which Duarte had just been convicted.

We conclude the trial court did not abuse its discretion in admitting this punishment evidence, *Davis*, 329 S.W.3d at 802, and overrule Duarte's third issue.

### III.    CONCLUSION

Having overruled all of Duarte's issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
11th day of July, 2013.

11